Argued October 9, affirmed December 29, 1972

# FARMERS INSURANCE EXCHANGE, *Appellant,* v. COLTON, *Respondent.*

504 P2d 1041

*Paul D. Clayton,* Eugene, argued the cause for appellant. With him on the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Donald R. Wilson, and Pozzi, Wilson & Atchison, Portland.

BRYSON, J.

Plaintiff brought this declaratory judgment proceeding seeking a declaration that a policy of automobile liability insurance issued by plaintiff to one Dorothy M. Brewer did not cover defendant, a passenger, for certain injuries he sustained in an automobile accident. Defendant counterclaimed for $10,000, the limits of the uninsured motorist coverage. The trial court gave judgment for defendant for $3,500, together with attorney fees. Plaintiff appeals.

Plaintiff issued a standard automobile liability insurance policy to Dorothy M. Brewer of Coos Bay, Oregon. At approximately 12:30 a.m. on August 7, 1969, Mrs. Brewer's car was being operated by her son, William C. Leslie. His passengers were defendant Robert B. Colton and Gregory Nelson. Leslie let Nelson out of the car in front of Nelson's house and proceeded west on Hemlock Street approximately 75 feet and turned right on 13th Street. After traveling approximately 100 feet north on 13th Street, Leslie's vehicle collided head-on with a telephone pole near the right-hand edge of the street. Leslie and Colton were both injured.

Defendant Colton testified that when Leslie had driven 50 feet north on 13th Street, he and Leslie saw headlights coming into their lane of traffic and that Leslie swerved to the right to avoid a head-on collision with the vehicle. Defendant stated that the oncoming vehicle was a blue 1957 Chevrolet sedan, and that "it was going way too fast for the corner."

Gregory Nelson heard the crash. The Nelson house is separated from 13th Street by two other residences, and Nelson could not see the scene of the accident. Nelson ran to the corner of Hemlock and 13th Streets

and saw a blue 1957 Chevrolet proceeding south on 13th and turning east onto Hemlock at a speed of 25-30 miles per hour. No other vehicles were in the vicinity.

Later the same morning Colton and Leslie went to the office of plaintiff's agent in Coos Bay. They described to the agent the circumstances of the accident and the nature of their injuries. The agent told them that the blue 1957 Chevrolet was a "phantom vehicle" and wrote that term in his report of the accident as the "other car involved." The agent instructed Leslie and Colton to send any medical bills to the insurance company, but the nature or extent of the insurance coverage was never explained. Defendant did not see the insurance policy. The agent did not tell defendant that he had to fill out any form or file any claim on the accident. Defendant asked whether he had to complete any forms or sign any papers, and the agent told him that he did not.

■ Defendant submitted several medical bills to plaintiff and they were promptly paid. Approximately five weeks after the accident, defendant returned to the agent's office and asked whether the insurance would pay for further treatments and plastic surgery on defendant's facial scars. The agent informed defendant that he was too late to file a claim under the policy's uninsured motorist coverage since all such claims had to be filed within 30 days of the accident.[1] Defendant then consulted an attorney and this litigation followed.

The policy issued to Mrs. Brewer contained a clause which stated:

"The terms of this policy which are in conflict

[1] Defendant qualified as an "insured" for the purposes of uninsured motorist coverage because he was occupying an insured vehicle with the permission of the named insured at the time of the accident. ORS 743.792(2)(a)(B).

with the statutes of the state wherein this policy is issued, are hereby amended to conform to such statutes."

ORS 743.792 requires that such policies provide uninsured motorist coverage against accidents caused by a "phantom vehicle," as defined in the statute. Although Mrs. Brewer's policy did not contain phantom vehicle coverage, the statute requires that the policy be construed as though it contained the phantom vehicle coverage required by statute.

ORS 743.792(2)(g) defines a phantom vehicle as follows:

"(g) 'Phantom vehicle' means a vehicle which causes bodily injury to an insured arising out of a motor vehicle accident which is caused by an automobile which has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident, provided:

"(A) There cannot be ascertained the identity of either the operator or the owner of such phantom vehicle;

"(B) The facts of such accident can be corroborated by competent evidence other than the testimony of the insured or any person having an uninsured motorist claim resulting from the accident; and

"(C) The insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer, to the Motor Vehicles Division of the Department of Transportation of the State of Oregon or to the equivalent department in the state where the accident occurred, and shall have filed with the insurer within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is un-

ascertainable, and setting forth the facts in support thereof."

Plaintiff contends that the trial court erred in finding that the requirements stated in subsections (B) and (C) (as to notice) quoted above had been satisfied.[2]

■ A prerequisite to recovery under most standard liability policies providing uninsured motorist coverage is proof of a physical contact between the hit-and-run vehicle and the insured or the vehicle in which the insured is riding at the time of the accident. See Annot., 25 ALR 3d 1299 (1969) ; *Page v. Insurance Co. of North America,* 3 Cal App 3d 121, 83 Cal Rptr 44 (1969).

> "* * * The physical contact requirement is designed to prevent fraudulent claims—as where a claimant alleges he has been driven off the highway by another vehicle, when in fact he lost control of his vehicle exclusively through his own negligence * * *." A. Widiss, A Guide to Uninsured Motorist Coverage 81 (1969).

However, the physical contact requirement has produced unfair results in situations where disinterested witnesses saw the accident and would testify that the accident was caused by an unidentified driver, although there was no actual contact between the vehicles in-

---

[2] In a letter opinion dated November 8, 1971, the trial court stated:

"* * * * *.

"I feel that the testimony of one Gregory Nelson, who had been a passenger in the car and had gotten out only moments before the accident and a little more than half a block away, was sufficient competent corroborating evidence to satisfy the provision of ORS 743.792 (1), [2], (g), (B).

"* * * * *.

"After studying and considering the other evidence and argument submitted by respective counsel, I find that defendant has also complied with the notice provisions of the statute.

"* * * * *."

volved.[9] Under Oregon's uninsured motorist statute, as amended in 1967, the provision eliminates the requirement of physical contact.

■ It is plaintiff's position that the testimony of Gregory Nelson cannot be considered corroboration of the "facts of such accident" within the statute because he did not see the accident and could only establish that a blue 1957 Chevrolet was at the place of the accident, not that it caused the accident. Plaintiff argues, "In the present case, it is not the knowledge of the occurrence which is significant from the company's standpoint. The significant events are the facts of the accident * * * including evidence of corroboration if such exists * * *." We do not agree with this limited interpretation of the statute.

The purpose of the amendment to the Oregon uninsured motorist statute was to broaden the right of recovery by the injured insured or passenger to include recovery where there is no contact between the negligent unidentified driver's vehicle and the vehicle in which the insured or passenger was riding. The

---

[9] "* * * This emphasis on the 'hit' in 'hit and run' situations prevents recovery in a common type accident where there is likely to be an uninsured motorist and a substantial amount of injury: the non-impact accident caused by one who flees the scene. For example: A, an uninsured motorist driving a stolen car while intoxicated careens over the center line of a highway and B, travelling in the opposite direction, swerves to avoid a head-on collision. As a result B's car rolls off the road and B and his passengers are severely injured. Thirty visiting bishops observe the entire event but none of them remembers the license number of A's automobile. Because there was no contact with the hit-run vehicle neither B nor his passengers may invoke the protection of the uninsured motorist clause. To prevent this absurd result without opening the door to false claims, the statute should provide for alternatives to impact, e.g., sworn statements by disinterested witnesses." Chadwick & Poche', "California's Uninsured Motorist Statute: Scope and Problems," 13 Hast L J 195, 197-98 (1961).

"facts of an accident" do not mean the total vision of all of the facts of impact or of a motor vehicle accident. We conclude that the statute requires the observation, with corroborated testimony thereof, of facts from which inferences may be drawn that the accident was caused by a phantom vehicle. The requirement of corroboration was intended to discourage and prevent fraudulent claims and this restriction should not be extended to prevent recovery where fraud does not exist. Gregory Nelson testified that a vehicle, which precisely fit defendant's description of the phantom vehicle, was in motion in the immediate vicinity and proceeding away from the Leslie car at the moment of the accident and that it rounded the corner at a speed of 25-30 miles per hour. The police were called immediately. The written report to the plaintiff's agent on the same morning of the accident stated:

"Describe What Occurred     Turn onto 13th going north when a blue 57 Chev came around the corner heading south was in our lane traveling at a high rate of speed. We turned to miss and hit the telephone pole in the middle of the block."

■ " 'Corroboration' is something which leads an impartial and reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstance independent of a statement of a witness." 2 E. Conrad, Modern Trial Evidence § 1155 (1956). This statute does not require that the claimant's prima facie case rest solely on the corroborating evidence. *Cf. Bush v. Johnson,* 237 Or 173, 390 P2d 932 (1964), holding that in an action against the personal representative of a negligent decedent, ORS 30.080 requires the plaintiff to prove a prima facie case by competent evidence other than his own testimony. Corroboration, as used in the phantom vehicle provision

of the statute, means evidence which supplements, strengthens, and confirms the testimony of the injured claimant. The corroborating evidence must tend to verify the claimant's version of the facts. *See State v. Tokstad,* 139 Or 63, 8 P2d 86 (1932).

Plaintiff lastly assigns as error the finding of the trial court that defendant had complied with the notice provisions of the statute and insurance policy.

Defendant testified that he did not learn of his rights under the uninsured motorist coverage until after he was told by plaintiff's agent that he was too late to file his claim. Immediately upon learning of the policy coverage, defendant filed a claim with plaintiff and requested arbitration.

In past cases we have excused an insured from giving timely notice of an accident or a claim required under a policy of insurance where it appears that the insured, after exercising reasonable diligence to learn of the accident or claim, did not possess sufficient knowledge of the facts to realize he had a duty of notice under the policy. In *Hoffman v. Employer's Liability Corp.,* 146 Or 66, 29 P2d 557 (1934), this court excused an insured from giving notice of an accident. After making reasonable efforts to discover whether an accident had happened, the insured acquired information so indefinite and uncertain that the court found that he had no notice of the accident. In *Turlay v. Farmers Insurance Exch.,* 259 Or 612, 488 P2d 406 (1971), the insured was excused from giving timely notice of an uninsured motorist claim where he reasonably believed that he knew the identity of the negligent driver. Only after the period set for the filing of such a claim had expired did the insured realize that the accident was caused by an uninsured motorist.

"To operate as an effective excuse, lack of

knowledge as to insurance coverage must be without negligence or fault of person seeking to be excused. * * *" 8 J. Appleman, Insurance Law and Practice 43, § 4745 (Supp 1972).

■ The policy under which defendant seeks to recover does not refer to phantom vehicle coverage or to any notice requirements pertaining to such coverage. Defendant never saw the policy, but even if he had, he would not have been apprised of his duty to notify plaintiff of his uninsured motorist claim as the policy did not include the phantom vehicle provision. Plaintiff's agent never informed defendant of the phantom vehicle coverage, although the agent knew from the outset that the injured parties stated that a phantom vehicle caused the accident. Defendant used all reasonable diligence to make certain that the forms necessary to report the accident and secure the policy coverage had been completed. The agent's assurance that nothing further needed to be done left the reasonable impression with defendant that the insurance company was assuming responsibility for defendant's medical costs. Defendant believed he was "covered" under Mrs. Brewer's policy, unaware of any fine distinctions between medical payments coverage and uninsured motorist coverage. Under these circumstances, defendant acted with reasonable diligence. The plaintiff, through its agent, did have notice that a phantom vehicle was involved.

■ Notice of the accident and its alleged cause does not constitute notice that the insured intends to claim certain policy benefits. The notice requirement by statute is a condition precedent to any liability on the part of the insurer. 8 J. Appleman, Insurance Law and Practice § 4732 (1962). The only conclusion which can

be drawn from the evidence is that defendant was excused from strict compliance with the notice requirements of ORS 743.792(2)(g)(C).[4]

Affirmed.

---

[4] *Cf.* Bowler v. Fidelity & Cas. Co., 53 NJ 313, 327-28, 250 A2d 580, 588 (1969). *See* Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv L Rev 961, 1281 (1970).

"Policy provisions respecting notice of loss, injury or suit should be reasonably construed, so as to conserve the true purpose of their presence in the contract. * * *" 8 J. Appleman, Insurance Law and Practice 4, § 4731 (1962).