[Nos. 12533-5-III; 12709-5-III. Division Three. May 12, 1994.]

FLOYD E. GERKEN, *Respondent*, v. MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Appellant*.

*Jeffory E. Adams,* and *Murray, Dunham & Murray,* for appellant.

*Dennis A. Dellwo, Meriwether D. Williams,* and *Winston & Cashatt,* for respondent.

SWEENEY, J. — Floyd E. Gerken was injured when the vehicle he was driving skidded onto the shoulder of the road and overturned. At the scene of the accident, he told a state trooper he swerved off the road to avoid hitting an unidentified vehicle that veered sharply into his lane. Mutual of Enumclaw Insurance Company (MOE), which insured the vehicle, denied Mr. Gerken underinsured motorist coverage because he had not provided independent corroboration of the accident. Mr. Gerken brought a declaratory judgment action against MOE. On cross motions for summary judgment, the court ruled there was sufficient competent corroborating evidence to satisfy RCW 48.22.030(8)(a). The court granted summary judgment in favor of Mr. Gerken and awarded him attorney fees and costs. MOE appeals contending the evidence presented is not sufficient to corroborate the existence of a phantom vehicle. In a consolidated appeal, MOE contends the court erred in awarding Mr. Gerken fees and costs. We affirm the summary judgment and the award of attorney fees. We reverse the award of litigation costs.

I

FACTUAL BACKGROUND

At about 3:30 p.m. on July 22, 1988, Mr. Gerken was driving a vehicle owned by Avil Gilkerson on Interstate 90 near Cle Elum. Mrs. Gilkerson, her daughter Susan Speer, and Mrs. Speer's three children were passengers. As they rounded a right-hand curve, Mr. Gerken turned the vehicle sharply to the right and applied the brakes. The vehicle left the roadway, struck an embankment and overturned. Mr. Gerken suffered serious injuries, including a back injury and

the partial loss of his right ear. Mrs. Speer injured her neck and middle finger. Mrs. Gilkerson was treated and released.

Washington State Trooper Eric Hanson arrived at the accident scene in about 11 minutes. Mr. Gerken told him he had swerved to avoid hitting a blue or brown 1984 or 1985 Plymouth or Dodge station wagon which pulled in front of his vehicle and veered sharply into his lane. Trooper Hanson did not attempt to locate the "phantom" vehicle. His report indicated that the yaw marks left by Mr. Gerken's vehicle were consistent with an avoidance action.

The MOE policy defined an uninsured motor vehicle as one "whose operator or owner cannot be identified and which was the direct cause of **bodily injury** to a **covered person**." If there was no physical contact with the phantom vehicle, the policy required "competent evidence as to the facts by a person who does not have a claim against this or any similar insurance as a result of this **accident**."

To corroborate the existence of the phantom vehicle, Mr. Gerken offered photographs of the yaw marks left at the scene of the accident and an affidavit of John Habberstad, an accident reconstruction expert. Mr. Habberstad concluded the vehicle left the road "as a result of the driver's effort to avoid collision with another object or thing by turning to the right and braking."[1] Mr. Gerken also submitted affidavits of Mrs. Gilkerson and Mrs. Speer which stated that Mr. Gerken had swerved to avoid a collision with a light colored automobile. Both women executed waivers and released their underinsured motorist claims against MOE, Mr. Gerken and the unidentified driver.

MOE denied Mr. Gerken's claim on the basis he had not provided independent corroboration of the accident. Mr. Ger-

---

[1]Mr. Habberstad further stated: "[I]t is more probable than not that the tire marks shown in the photograph . . . are consistent with, and constitute evidence of, an avoidance action on behalf of the driver of the automobile making the tire marks. The tire marks were made by a vehicle while performing a rapid right-hand turn, generating 'yaw' tire marks. The basis of my opinion is that the tire marks show a yaw configuration evidencing a vehicle in a right-hand turn and skid which must be initiated and carried through by the driver of the vehicle to obtain the centrifugal tire mark results . . .".

ken sued and moved for summary judgment. In its cross motion for summary judgment, MOE submitted an affidavit of Larry Stadler, an accident reconstruction expert. Mr. Stadler could not determine the exact reason why Mr. Gerken's vehicle left the road, but offered several possible suggestions, including: defective front brakes; driver inattention; oversteering; attempt to avoid an object on the highway such as a rock or animal; a driver reaching for an object or trying to kill a bee inside the car; or if the driver was asleep or intoxicated. The court ruled that Mr. Gerken had corroborated the existence of a phantom vehicle by the photographs of the yaw marks and Mr. Habberstad's affidavit. The court further ruled that Mrs. Speer and Mrs. Gilkerson, who had both released their claims against MOE, Mr. Gerken and the unidentified driver, could corroborate Mr. Gerken's version of the accident. It entered summary judgment in favor of Mr. Gerken and awarded him attorney fees of $24,000, litigation costs of $1,298.34 and statutory costs of $272.41. This appeal follows.[2]

## II
### Evidence To Corroborate Existence of Phantom Vehicle

MOE maintains the court erred in granting summary judgment in favor of Mr. Gerken because the existence of the phantom vehicle has not been corroborated. MOE argues that (1) no logical conclusion can be drawn from the yaw marks; (2) Mr. Habberstad cannot conclude why Mr. Gerken swerved from the road; (3) Mrs. Speer and Mrs. Gilkerson have underinsured motorist claims and therefore are precluded from corroborating the accident; and (4) the affidavit of its expert, Mr. Stadler, indicates various reasons for a vehicle to leave the road, other than a phantom vehicle.

█ Standard of Review. On summary judgment we engage in the same inquiry as the trial court. *Grimsrud v. State*, 63 Wn. App. 546, 548, 821 P.2d 513 (1991); *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 855, 816 P.2d 75 (1991).

---

[2]Mr. Gerken filed a cross appeal on the basis that the MOE underinsured motorist provision is void as against public policy. He does not argue this point in his brief and we do not address it in this appeal.

Summary judgment is appropriate if there is no genuine issue as to any material fact. Evidence must be considered in a light most favorable to the nonmoving party. *Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

■ Interpretation or construction of an insurance contract is a question of law and may properly be determined on motion for summary judgment. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993), *opinion supplemented*, 123 Wn.2d 131, 865 P.2d 507 (1994).

■ Statutory Language. The MOE policy requires that in the absence of physical contact with the phantom vehicle, there must be "competent evidence as to the facts by a person who does not have a claim against this or any similar insurance as a result of this **accident**." The underinsured motorist (UIM) statute[3] is intended to provide broad protection against financially irresponsible motorists and is construed broadly to meet this legislative goal. *Nationwide Ins. v. Williams*, 71 Wn. App. 336, 341-42, 858 P.2d 516 (1993). RCW 48.22.030 is also intended to prevent fraudulent claims. *Nationwide*, at 342. It therefore requires "testimony from someone other than the claimant or anyone else who stands to benefit from proof of a 'phantom vehicle.' " *Nationwide*, at 342 (quoting *Gobin v. Allstate Ins. Co.*, 54 Wn. App. 269, 273, 773 P.2d 131 (1989)).

■ Corroborating Evidence. In the context of RCW 48.22-.030(8), corroborating evidence means " 'evidence that tends to strengthen or confirm the testimony of the insured . . .' " and/or other claimants. *Nationwide*, at 343 (quoting *Powell v. Viking Ins. Co.*, 44 Wn. App. 495, 502, 722 P.2d 1343 (1986)). Corroboration "is something which leads an impartial and

---

[3]RCW 48.22.030(8) provides:

"For the purposes of this chapter, a 'phantom vehicle' shall mean a motor vehicle which causes bodily injury, death, or property damage to an insured and has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident if:

"(a) The facts can be corroborated by competent evidence other than the testimony of the insured . . .; and

"(b) The accident has been reported to the appropriate law enforcement agency within seventy-two hours of the accident."

reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstance independent of a statement of a witness.' " *Farmers Ins. Exch. v. Colton*, 264 Or. 210, 217, 504 P.2d 1041, 1045 (1972). Corroborating evidence "must tend to verify the claimant's version of the facts". *Colton*, at 218.

The court here correctly concluded that Mr. Gerken had provided sufficient competent corroborating evidence to satisfy the requirements of RCW 48.22.030(8)(a). While each part of the evidence considered separately may not have been sufficient to satisfy the requirements of the statute, when taken as a whole it does.

Photographs of Yaw Marks. The investigating trooper, Trooper Hanson, confirmed that the photographs introduced in support of Mr. Gerken's motion accurately reflected the scene of the accident. It was his opinion that the yaw marks possibly demonstrated an avoidance maneuver reaction. Experts for both parties also relied on the photographs for their conclusions that the yaw marks showed an avoidance-type reaction. There is therefore substantial evidence that Mr. Gerken was engaged in an avoidance maneuver at the time of the accident.

MOE is correct that the photographs are not evidence of what was being avoided. The photographs, however, were only part of the puzzle before the court. Moreover, Mr. Gerken is not required to prove the existence of a phantom vehicle. He need only present evidence which corroborates (strengthens or confirms) his testimony of the phantom vehicle.

Affidavits of Passengers. Mr. Gerken offered the affidavits of Mrs. Gilkerson and Mrs. Speer, each of which tended to corroborate his version of the accident. Mrs. Gilkerson:

> At approximately 3:30 p.m., a light colored Dodge or Plymouth Aries-type stationwagon [*sic*] automobile came up on the left side of our car and veered sharply and without warning or signal out of the left lane of travel and into the right lane towards our car. It was clear to me that a collision was about to occur because the driver of the other vehicle was not paying attention. . . . At the same time, Floyd observed the other car and applied the brakes and swerved to the right to avoid a collision.

Mrs. Speer:

Between 2:30-3:30 p.m., a light colored automobile came up on the left side of the car which we were travelling in and turned sharply and without warning to the right lane where our car was travelling. It looked as if a collision was imminent. Floyd immediately applied the brakes and swerved to the right to avoid a collision. Had he not taken this evasive action, we would have been struck by the vehicle which swerved into our lane without warning.

MOE argues that the trial court should not have considered the affidavits of Mrs. Speer and Mrs. Gilkerson because each had the right to assert an uninsured motorist claim. MOE relies on *Gobin v. Allstate Ins. Co., supra*. There, Allstate paid personal injury protection (PIP) benefits to the driver and her passengers after the insured vehicle hit a tree to avoid an alleged phantom vehicle. The driver attempted to use one of the passengers as a corroborating witness. The passenger had received treatment on the night of the accident, was paid over $400 in PIP medical benefits, and had signed a release. The court held the passenger was not qualified to be a corroborating witness because the release failed to bar the passenger's claims against the phantom driver. *Gobin*, at 272.

■ Our holding is not inconsistent with *Gobin*. Mrs. Gilkerson and Mrs. Speer executed waivers releasing any claims against MOE, Mr. Gerken or the unidentified driver. Similar to our holding in *Powell v. Viking Ins. Co., supra*, neither Mrs. Speer nor Mrs. Gilkerson was making a claim for damages either individually or as a member of a marital community at the time their statements were provided. Each has released any possible responsible party and MOE from any cause of action, demands, damages and claims for injuries or damages.

This question has also been recently addressed by the Oregon Court of Appeals in *To v. State Farm Mut. Ins.*, 123 Or. App. 404, 860 P.2d 294, *review allowed*, 318 Or. 170, 867 P.2d 1384 (1993). There, a driver and a passenger were the only witnesses to a "phantom vehicle". Interpreting the Oregon underinsured motorist statute liberally to protect the insurance buying public, the court recognized that fraud and collusion are more likely to occur when a witness has a

financial stake in the outcome of the insured's claim. *To*, at 409-10. The court held that because the passenger/witness had released all claims, his testimony was sufficient as a matter of law to corroborate the facts alleged by the driver/plaintiff. *To*, at 410. The court here appropriately considered the affidavits of Mrs. Gilkerson and Mrs. Speer.

Res Gestae Statement. Trooper Hanson was dispatched to the scene of the accident at 3:37 p.m. and arrived at 3:45 p.m., 11 minutes after the accident occurred. When he arrived, Mr. Gerken related that a phantom vehicle had forced him to swerve off the road. Mr. Gerken made the statement despite his injuries. There is nothing before us which would suggest his comments were the result of premeditation, reflection or design.

In *Nationwide*, the court recognized that consideration of an insured's excited utterance to corroborate the existence of a phantom vehicle does not undermine the Legislature's intent to prevent fraudulent claims. The excited utterance exception to the hearsay rule is grounded "in the notion that under the stress of excitement caused by a startling event a declarant may spontaneously blurt out a statement, and, because of the circumstances, will not have the opportunity to fabricate." *Nationwide*, at 343 (citing *State v. Dixon*, 37 Wn. App. 867, 872, 684 P.2d 725 (1984)).

When considered collectively, the photographs, experts' opinions, eyewitness statements, and Mr. Gerken's res gestae statement are sufficient corroborating evidence to satisfy the requirement for corroboration set out in MOE's policy.

## III

### ATTORNEY FEES AND COSTS

MOE further contends the court erred in awarding Mr. Gerken attorney fees and costs pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). MOE argues the holding of *Olympic S.S.* is limited to those policies which have a supplemental payments provision. Further, even if fees are to be awarded, MOE argues that the court abused its discretion in the amount of its award.

*Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 65, 738 P.2d 665 (1987).

<u>Award of Attorney Fees</u>. An award of attorney fees is proper when authorized by contract, statute or a recognized ground of equity. *State v. Keeney*, 112 Wn.2d 140, 142, 769 P.2d 295 (1989). In *Olympic S.S.*, the court held an insured was entitled to fees pursuant to a supplementary payments paragraph in the policy which provided:

> The Company . . . will pay, in addition to the applicable limits of liability:
>
> . . . .
>
> . . . reasonable expenses incurred by the *insured at the Company's request in assisting the Company in investigation or defense of any claim or suit . . ..*

(Some italics ours.) *Olympic S.S.*, at 51-52. Recognizing the disparity in bargaining power between an insurance company and its policyholder, the court further noted

> [w]e also extend the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured.

*Olympic S.S.*, at 52 (citing *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 327, 352 S.E.2d 73, 77 (1986)).

Subsequently, in *Estate of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 844 P.2d 403 (1993), despite the absence of a supplementary payments paragraph, the court held that an award of attorney fees was proper. The court reiterated the holding of *Olympic S.S.*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract". *Estate of Jordan*, at 508.

█ Recently, in *State Farm Mut. Auto. Ins. Co. v. Johnson*, 72 Wn. App. 580, 871 P.2d 1066 (1994),[4] Division One of this court recognized that subsequent to *Olympic S.S.* courts have denied an award of attorney fees in the absence of a contractual fee provision in the policy. Relying on *Estate of*

---

[4] A petition for review was filed on March 17, 1994.

*Jordan*, the court in *Johnson* observed that the holding in *Olympic S.S.* was quite specific and without limitations — "[A]n award of fees is required . . . where the insurer compels the insured to assume the burden of legal action . . .". *Johnson*, at 594. Accordingly, the trial court's award of attorney fees to Mr. Gerken was proper.[5]

■ Reasonableness of Award. Although the reasonableness of an award of attorney fees is subject to appellate review, *Allard v. First Interstate Bank*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989), a trial court's exercise of discretion will only be reversed for abuse of that discretion, *Boeing*, at 65.

Both parties presented affidavits concerning fees. Mr. Gerken's affidavit reflected that his attorney had invested 352.63 hours in the matter through the summary judgment. He requested an award of $34,325.55. MOE submitted an affidavit reflecting 92.1 hours of legal time. Counsel for Farmers Insurance Company, which provided Mr. Gerken with insurance coverage, expended 69.9 hours. MOE incurred fees of $8,289 and Farmers' fees totaled $6,117.86. MOE submitted affidavits of other lawyers attesting to the fact that Mr. Gerken's legal fees were excessive and unreasonable. Mr. Gerken submitted affidavits to support his fee request.

At a hearing, the trial court considered the time records submitted and affidavits of various attorneys. It then noted:

> I have considered the nature of the case, complexity of the case, the result obtained, the number of legal issues that had been brought before the court, recognizing that also that there was some time that had to be spent by the plaintiffs before they filed the case for their own factual investigation and legal investigations . . .[.]

Following that consideration, it was persuaded that $24,000 (a reduction of just over $10,000) was a reasonable attorney

---

[5]In light of the strong public policy reasoning which supports the court's holding in *Olympic S.S.*, we are not persuaded by MOE's argument that Mr. Gerken is not entitled to the award because he was a "covered insured", rather than a "named insured". Despite the nomenclature given to Mr. Gerken's rights under the MOE policy, he was compelled to enforce an insurance contract through legal action and therefore would be entitled to an award of attorney fees as the prevailing party. *Olympic S.S.*, at 53.

fee award. This is an exercise in discretion for which there is a rational basis and therefore no abuse of discretion.

Mr. Gerken also requests an award of fees on appeal, pursuant to RAP 18.1. That rule authorizes an award if "applicable law grants to a party the right to recover reasonable attorney fees . . .". RAP 18.1(a). For the reasons discussed above, Mr. Gerken is entitled to attorney fees on appeal.

 Costs of Litigation. Finally, MOE argues the court erred in awarding Mr. Gerken litigation costs of $1,298.34 which included fees for Mr. Gerken's investigators, experts and photographs. MOE maintains there is no authority for such an award. Costs as narrowly defined in RCW 4.84.010 include specific fees the prevailing party has incurred. Cost bills should not be inflated to recover additional fees. *Boeing*, at 66. Items that are allowable as costs include: filing fees, costs of service of process, notary fees, costs of reports and records as evidence, statutory attorney and witness fees, costs of transcription of depositions used at trial or arbitration and "costs otherwise authorized by law . . .". RCW 4.84.010. The right to costs is a substantive right, "purely a matter of statutory regulation". *Platts v. Arney*, 46 Wn.2d 122, 128, 278 P.2d 657 (1955).

The court here awarded Mr. Gerken the costs of "investigation, photographs and expert witness fees" in the amount of $1,298.34. The court stated that the costs were reasonably and necessarily incurred as set forth in RCW 4.84.010.

There is no statutory basis for an award of these costs. The costs recovered should be limited to those defined in RCW 4.84.010.

To summarize, the summary judgment granted in favor of Mr. Gerken is affirmed, as is the award of attorney fees. The award of litigation costs is reversed and Mr. Gerken is awarded attorney fees on appeal.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

Review denied at 125 Wn. 2d 1005 (1994).