1

Argued and submitted March 9, 2006, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings June 7, 2007

Jefferson WILSON,
*Petitioner on Review,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a municipal corporation,
*Respondent on Review.*

(0301-00495; CA A125823; SC S52741)

161 P3d 933

Willard E. Merkel, Portland, argued the cause and filed the brief for petitioner on review.

Keith M. Garza, Portland, argued the cause and filed the brief on the merits for respondent on review.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Riggs, Balmer, and Kistler, Justices.**

DURHAM, J.

** Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Walters and Linder, JJ., did not participate in the consideration or decision of this case.

## DURHAM, J.

This is an action for damages due to personal injury. Plaintiff was a passenger on a bus operated by defendant Tri-County Metropolitan Transportation District (TriMet). Plaintiff claims that he suffered injuries when a "phantom vehicle" (a legal term that we discuss below) caused the bus in which he was riding to brake sharply, resulting in his injury. The trial court granted summary judgment for TriMet, and the Court of Appeals affirmed without opinion. *Wilson v. Tri-County Metro. Trans. Dist.*, 200 Or App 291, 114 P3d 1157 (2005). On review, we conclude that the trial court erred in granting summary judgment. Thus, we reverse the lower court decisions and remand to the circuit court for further proceedings.

TriMet contends that the trial court properly granted summary judgment because plaintiff failed to report the accident to the police within 72 hours. The police reporting requirement appears in ORS 742.504(2)(g)(C), which is a part of a model uninsured motorist coverage statute. As a self-insurer, TriMet adopted an ordinance that provided uninsured motorist coverage, but it did so by referring to the uninsured motorist coverage statutes by legal citations rather than through express terms that would notify a reader of the conditions and limits of coverage. Plaintiff contends that the 72-hour police reporting requirement that appears in the statutory scheme is not enforceable against him because TriMet's ordinance contains no wording describing that requirement. Moreover, plaintiff argues, TriMet's ordinance contains a notification of claim procedure, but that procedure does not disclose any police reporting requirement. The issue before the court is whether the statutory police reporting requirement is enforceable against plaintiff despite the nondisclosure of that requirement in TriMet's ordinance.

Before addressing the facts, we summarize the relevant statutes and TriMet ordinance provisions that govern plaintiff's claim. TriMet is a municipal corporation created under ORS 267.010 to 267.390 to provide mass transportation services to the public, in part through the operation of buses. Oregon's Financial Responsibility Law, ORS 806.010 to 806.300, requires all owners or operators of motor vehicles,

including TriMet, to meet statutory financial responsibility requirements for motor vehicle accidents either by obtaining a liability insurance policy or by "[b]ecoming self-insured as provided under ORS 806.130." ORS 806.060. In *Haynes v. Tri-County Metro.*, 337 Or 659, 661-62, 103 P3d 101 (2004), this court summarized the manner in which TriMet has chosen to satisfy the Financial Responsibility Law by becoming self-insured for liability to passengers injured while traveling on TriMet's buses, including injuries caused by an uninsured motorist:

> "The Financial Responsibility Law requires the owner of any motor vehicle to be able to 'respond in damages' for liability from accidents arising out of the operation of that motor vehicle. ORS 806.060(1). As an alternative to purchasing insurance to cover such liability, an owner may 'self-insure' by meeting certain statutory criteria and obtaining a certificate of self-insurance from the Oregon Department of Transportation. *See* ORS 806.130 - 806.140 (describing requirements to obtain self-insurance and certificates of self-insurance). To qualify as a self-insurer under ORS 806.150, the owner must 'agree to pay the same amounts with respect to an accident occurring while the certificate is in force that an insurer would be obligated to pay under a motor vehicle liability policy, *including uninsured motorist coverage* * * *.' ORS 806.130(3) (emphasis added).
>
> "TriMet chose to self-insure and, as described in greater detail below, adopted an ordinance in which it agreed to compensate its passengers for injuries caused by uninsured motorists in accordance with the provisions of ORS 742.500 to 742.510. The TriMet ordinance also established a claims procedure for TriMet passengers injured on TriMet vehicles."

ORS 278.215(2) requires defendant, as a self-insurer, to provide the same uninsured motorist coverage that the law requires of every motor vehicle liability insurance policy. That statute provides:

> "Any local public body * * * which establishes a self-insurance program under ORS 30.282 for or on account of the operation of motor vehicles within the local public body's control, shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504 * * *."

ORS 806.130(3) provides that a self-insurer must "[a]gree to pay the same amounts * * * that an insurer would be obligated to pay under a motor vehicle liability insurance policy, including uninsured motorist coverage * * *."

The TriMet ordinance mentioned in *Haynes* is the means by which TriMet sought to fulfill its statutory obligation under ORS 278.215(2), ORS 806.130(3), and ORS 742.504 to provide uninsured motorist coverage to its passengers. Because the uninsured motorist coverage statute, ORS 742.504, and TriMet's ordinance form the foundation for our disposition of this case, we set them out in detail.

ORS 742.504 "set[s] out a comprehensive model UM/UIM [uninsured motorist/underinsured motorist] policy * * *." *Vega v. Farmers Ins. Co.*, 323 Or 291, 302, 918 P2d 95 (1996). ORS 742.504 provides, in part:

"Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section requires the insurer to reproduce in the policy the particular language of any of the following provisions:

"(1)(a) The insurer will pay all sums that the insured, the heirs or the legal representative of the insured is legally entitled to recover as general and special damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the uninsured vehicle. Determination as to whether the insured, the insured's heirs or the insured's legal representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured and the insurer, or, in the event of disagreement, may be determined by arbitration as provided in subsection (10) of this section."

The model policy terms in that statute define "uninsured vehicle" to include a "phantom vehicle." ORS 742.504(2)(j)(C). ORS 742.504(2)(g) provides that a "phantom vehicle" is

"a vehicle that causes bodily injury to an insured arising out of a motor vehicle accident that is caused by a vehicle which has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident, provided:

"(A) The identity of either the operator or the owner of the phantom vehicle cannot be ascertained;

"(B) The facts of the accident can be corroborated by competent evidence other than the testimony of the insured or any person having an uninsured motorist claim resulting from the accident; and

"(C) *The insured or someone on behalf of the insured reported the accident within 72 hours to a police, peace or judicial officer, to the Department of Transportation or to the equivalent department in the state where the accident occurred,* and filed with the insurer within 30 days thereafter a statement under oath that the insured or the legal representative of the insured has a cause or causes of action arising out of the accident for damages against a person or persons whose identities are unascertainable, and setting forth the facts in support thereof."

(Emphasis added.)

Many of the provisions of the model policy set out in ORS 742.504, which consists of an introductory paragraph and 12 subsections, "primarily benefit the insurer, rather than the insured * * *." *Vega,* 323 Or at 301. That aspect of the uninsured motorist coverage statute takes on a particular interpretive significance when we examine those pro-insurer provisions in light of the "no less favorable" clause in the statute's introductory paragraph (*i.e.*, every policy "shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy"). As this court stated in *Vega:*

"[T]hose pro-insurer provisions do serve an obvious legislative purpose if subsections (1) to (12) are read as a comprehensive bottom line: They are the *only* provisions that disfavor insureds that an insurer may include in a policy for UM/UIM coverage.

"We think that it is clear from the foregoing contextual clues that, in enacting ORS 742.504, the legislature did not intend to leave insurers free to structure their policies as they pleased *outside* the subject matter represented by the provisions at subsections (1) to (12). Rather, we think that the contrary is true—that the legislature intended to provide insurers with some measure of freedom *within* that subject matter, so long as any changes do not disfavor insureds. In short, we read ORS 742.504(1) to (12) as setting out a comprehensive model UM/UIM policy that may be varied only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added."

*Id.* at 301-02 (emphases in original).

As noted in *Haynes*, 337 Or at 665, TriMet adopted an ordinance, known as Chapter 9 of the TriMet Code, to provide uninsured motorist coverage to its bus passengers. At the time of the events in this case,[1] Chapter 9 of the TriMet Code provided, in part:

"9.05   Findings. The Board of Directors finds that it is necessary and convenient for the proper operation of the transit system to clarify the limits of the compensation to Tri-Met passengers suffering bodily injury through the negligence of drivers of uninsured vehicles, and to set out the procedures for receiving that compensation.

"9.10   Compliance with ORS. As a self-insurer, Tri-Met complies with the provisions of ORS Chapter 806, the Financial Responsibility Law, and ORS 742.500 through 742.510, concerning Uninsured Motorist Coverage. Nothing in this Chapter shall be construed as adopting procedures or limits to liability other than those required by ORS Chapter 806 and ORS 742.500 through 742.510 except that light rail transit vehicles are exempt under ORS 742.500(2)(a) as 'devices used exclusively upon stationary rails or tracks,' but are included within the coverage of this Chapter.

"9.15   Definitions. As used in this Chapter, the following words and phrases shall have the meaning indicated:

---

[1] The parties have notified this court that defendant substantially revised Chapter 9 of the TriMet Code in 2004. Plaintiff acknowledges that, "[a]s a result of the amendment, the Tri-Met Code now tracks the language [of] ORS 742.504 *et seq.* nearly word for word." In this opinion, all references to Chapter 9 and its subsections are to the version that existed before the 2004 amendment.

"* * * * *

"D. An 'uninsured vehicle' is as defined in ORS 742.504.

"9.20    Coverage.

"A.    A claim by a Tri-Met passenger for benefits from Tri-Met for bodily injury or death resulting from the negligence of the driver of an uninsured vehicle shall be subject to the provisions of ORS 742.504 and shall be limited to the benefits enumerated below:

"(1)    $25,000 because of bodily injury to or death of one passenger in any one accident;

"(2)    [description of other coverage limits omitted].

"9.25    Claims Procedure. The following procedure shall be utilized in making claims for compensation under this Chapter:

"A.    As soon as practicable, the passenger or other person making [the] claim shall give to Tri-Met written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment and other details entering into the determination of the amount payable hereunder. The passenger and every other person making claim hereunder shall submit to examinations under oath by any person named by Tri-Met and subscribe the same, as often as may be reasonably required. Proof of claim shall be made upon forms furnished by Tri-Met.

"* * * * *

"9.50    Condition Precedent. No action shall lie against Tri-Met unless, as a condition precedent thereto, the passenger and legal representative of the passenger have fully complied with all the terms of this Chapter."

As the parties acknowledge, with the exception of the reference in TriMet Code section 9.15(D) to the definition of "[a]n 'uninsured vehicle' in ORS 742. 504[,]" and the citation of that same statute in TriMet Code section 9.20, regarding coverage, the TriMet Code contains no wording that identifies or defines a "phantom vehicle" or states any procedural requirements for obtaining coverage for injuries caused by a phantom vehicle. In response to plaintiff's criticism that the

TriMet Code fails to satisfy the "no less favorable" requirement in ORS 742.504 with respect to phantom vehicle coverage, TriMet points to TriMet Code section 9.15(D), which provides that "[a]n 'uninsured vehicle' is as defined in ORS 742.504[ ]" and to TriMet Code section 9.10, which provides:

> "As a self-insurer, Tri-Met complies with the provisions of ORS Chapter 806, the Financial Responsibility Law, and ORS 742.500 through 742.510, concerning Uninsured Motorist Coverage. Nothing in this Chapter shall be construed as adopting procedures or limits to liability other than those required by ORS Chapter 806 and ORS 742.500 through 742.510 * * *."

The parties disagree about the significance of those aspects of the TriMet Code. We return to that matter later in this opinion.

With that summary of TriMet's ordinances and the relevant statutes in mind, we address the pertinent facts. Because the trial court granted summary judgment against plaintiff, we set out all facts in the light most favorable to him. *See* ORCP 47 C (setting out summary judgment standard). On January 31, 2002, as noted above, plaintiff was a passenger on a bus owned by defendant. The bus braked suddenly to prevent a collision with another vehicle, and plaintiff was injured. Plaintiff did not report his injury to the bus driver, and neither plaintiff nor anyone else filed an accident report with the police. Plaintiff notified TriMet of his injury by February 15, 2002. Tri-Met refused to pay plaintiff's claim, and plaintiff filed this action.

TriMet moved for summary judgment, arguing that plaintiff failed to report the accident to the police within 72 hours. *See* ORS 742.504(2)(g)(C) (stating that requirement). In support of its motion, defendant submitted (among other things) an affidavit by the bus driver stating that he did not remember the incident and did not remember plaintiff. Defendant also submitted an accident report, prepared by the bus driver on March 12, 2002, in which the driver stated that he did not remember the incident.

Plaintiff opposed the motion for summary judgment. Plaintiff did not dispute that neither he nor anyone else had reported the accident to the police. Instead, plaintiff argued

that TriMet Code section 9.25 created a specific claim procedure that did not require injured passengers to report accidents to the police. He pointed out that the TriMet Code did not include a reporting provision that mentioned the police, and that TriMet Code section 9.25 expressly required notice to defendant only "[a]s soon as practicable." Plaintiff argued that he was excused from filing an accident report with the police because the TriMet Code did not give him notice of such a requirement. Defendant contended that TriMet Code section 9.25 permissibly incorporated the definition of "uninsured vehicle" from ORS 742.504 without quoting the words of that statute and that, under that incorporated statutory definition, the timely filing of an accident report with the police within 72 hours was a condition precedent to its liability for uninsured motorist coverage.

■ Because the trial court granted summary judgment, we must determine whether "there is no genuine issue as to any material fact and [whether] the moving party is entitled to a judgment as a matter of law." ORCP 47 C. There is no genuine issue of material fact if,

> "upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

*Id.*

■ On review, the parties reiterate their arguments before the trial court, noted above. The parties' conflicting arguments center on the proper interpretation of two sources of law: (1) a statute, ORS 742.504; and (2) an ordinance, Chapter 9 of the TriMet Code. Our objective in construing those sources of law is to determine the intention of their drafters. We determine the legislature's intent in enacting a statute by examining the text and context of the statute, including prior judicial applications of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). TriMet's ordinance "represents its agreement to provide coverage[,]" including uninsured motorist coverage under the provisions of ORS 742.504. *Haynes*, 337 Or at 667.

We determine the meaning of the provisions of TriMet's ordinance providing insurance coverage as a question of law. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992) (court construes insurance agreement as question of law). Our objective in determining the respective meanings of those two sources of law is to conduct the "policy-to-policy comparison of favorableness" that *Vega* required. *Vega*, 323 Or at 300. That is, we determine the phantom vehicle coverage that TriMet's ordinance-policy offered and compare it to "the coverage offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)."[2] *Id.* at 299 (emphasis omitted).

There is no question that the TriMet Code provides uninsured motorist coverage under ORS 742.504, including phantom vehicle coverage, to bus passengers like plaintiff. The question before the court is whether the TriMet Code does so in a manner that satisfies the "no less favorable" provision in ORS 742.504 and, if not, the consequences of that defect.

The TriMet Code contains no wording that refers to a requirement that a claimant or someone acting on the claimant's behalf must file a report of an accident caused by a phantom vehicle within 72 hours with a police, peace, or judicial officer or to the Department of Transportation. In fact, the TriMet Code does not refer to any definition of "phantom vehicle"; it does not describe phantom vehicle coverage at all. TriMet argues that those textual shortcomings are irrelevant because the TriMet Code sets out statutory citations, listed above, that ultimately include ORS 742.504(2)(g) and (2)(j)(C), which describe phantom vehicle coverage and set out the accident reporting obligation. We must decide whether TriMet's theory of incorporation-by-statutory-reference satisfies the "no less favorable" provision in ORS 742.504.

---

[2] The arguments of the parties assume that the policy-to-policy comparison described in *Vega* is the proper inquiry here. The parties do not discuss in their briefs whether TriMet, as a self-insurer, has the same or a different duty as an ordinary motor vehicle liability insurer to deliver to or otherwise notify an insured of the terms of its uninsured motorist coverage under the TriMet Code. Consequently, we do not address that issue.

We begin that statutory interpretation inquiry with the words of ORS 742.504, which, as already noted, requires every policy subject to that statute to

"provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section requires the insurer to reproduce in the policy the particular language of any of the following provisions: * * *"

The terms of that statute do not expressly authorize, or refer to, a process of including or incorporating statutory coverage requirements into a policy by means of a legal citation only. Under TriMet's theory, the statutory incorporation methodology that TriMet employed is sufficient, it claims, because TriMet's ordinance provides uninsured motorist coverage to the exact extent that the cited statutes require, nothing more and nothing less, and thus confirms that the coverage provided is "no less favorable" to the insured than the terms of ORS 742.504. TriMet also relies on the second sentence of ORS 742.504, quoted above, which, according to TriMet, relieves TriMet of any responsibility to set out the wording of ORS 742.504 in its ordinance.

TriMet is correct that the phrase, "than if the following provisions were set forth in the policy," in ORS 742.504 by itself does not require a reproduction of the statute's coverage provisions in TriMet's ordinance. Those words confirm, instead, that the provisions of ORS 742.504 are the basis for a "favorability" comparison between the coverages described in the statute and the ordinance. *Vega*, 323 Or at 300. But that comparison proceeds not simply from a literal reading of the words of ORS 742.504, but rather, in the statute's terms, as "if the following provisions were set forth in the policy." That phrase indicates that the determination whether the insurance policy or ordinance is not "less favorable in any respect to the insured" shall include consideration of whether the insurer, in its policy or ordinance, gave the same notice of terms and conditions that disfavor the insured that a review of ORS 742.504 would disclose. A failure of the policy or ordinance to give the same notice to the insured of unfavorable, proinsurer conditions that a review of the statute would disclose is one "respect" in which a policy or ordinance may provide coverage that is "less favorable" to the insured.

The second sentence in ORS 742.504, quoted above, qualifies the first, but the scope of that qualification is not as broad as TriMet contends. The second sentence relieves the insurer of any duty to use the "particular language" of the statutory model policy terms. We do not read that provision, as some might, as licensing the use in policies of a language other than English. Rather, that wording safeguards insurance policies that fully and accurately describe the substance of the statutory model policy provisions but, in doing so, employ changes in wording, grammar, or editorial presentation that depart from the "particular language" of those provisions. Thus, we disagree with TriMet's claim that the second sentence validates its use of a statutory citation to only set out phantom vehicle coverage that is "no less favorable" to insureds than the explicit terms of the policy described in ORS 742.504.

Our review of the statutory text indicates, tentatively, that TriMet's statutory incorporation methodology is vulnerable to attack under the "no less favorable" provision in ORS 742.504. Noncompliance with the statutory requirement of police notification could jeopardize plaintiff's claim for phantom vehicle coverage. A review of the terms of ORS 742.504 would disclose that requirement; a review of TriMet's ordinance would not.

Our statutory construction, however, must include the context of ORS 742.504, and not only its text. Context includes related statutes, but we have discovered no other related statutes that shed any light on the legislature's intent in regard to ORS 742.504.

Context also includes decisions from this court interpreting and applying the statutory provisions. We turn now to that source.

Several of this court's cases are instructive. In *North River Insur. v. Kowaleski*, 275 Or 531, 551 P2d 1286 (1976), an insured brought a claim for uninsured motorist coverage more than two years after the vehicle accident. The policy was silent regarding any time limitation on filing a claim for benefits. The court rejected the insurer's contention that the court should read into the policy the two-year limitation that was a permissible proinsurer provision of the then-existing statutory model policy. This court stated:

"Insurance companies can avoid limitation problems by clarifying the terms of the policy so as to provide specifically for the two-year period. *Cf.* Widiss, Uninsured Motorist Coverage § 2.23 at 47-48 (1969). The [insurer] plaintiff in this case did not choose to do so. There is no indication that the parties agreed to the two-year limitation, and therefore such an agreement cannot be read into the contract between them. *Schlecht v. Walsh*, 273 Or 221, 540 P2d 1011 (1975).

"We conclude that in the absence of a specific agreement between the parties, ORS 743.792(12) does not apply. The limitation on defendant's bringing the action is the six-year period provided for in ORS 12.080(1)."

*Id.* at 535.

*North River Insurance* confirms that this court will not read into the insurance contract conditions of coverage—there, a limitations period—that the insurer has not included expressly. The uninsured motorist coverage statute, ORS 742.504, lists a number of proinsurer provisions that, by law, the insurer *may* include in its policy. *Id.* at 535 (noting that the Oregon legislature "chose to draft the Oregon statute permissively"). In the absence of a "specific agreement between the parties," *id.*, to a particular proinsurer requirement, it does not apply.

In *Farmers Insurance Exch. v. Colton*, 264 Or 210, 504 P2d 1041 (1972), an insurer issued a motor vehicle liability policy that contained no description of statutorily required phantom vehicle coverage. However, the policy did contain the following recital:

" 'The terms of this policy which are in conflict with the statutes of the state wherein this policy is issued, are hereby amended to conform to such statutes.' "

*Id.* at 213-14. The statute then in effect defined a "phantom vehicle" virtually identically to the definition that now appears in ORS 742.504(2)(g). The issue, as material here, was whether the reporting requirement in the statutory definition of "phantom vehicle" was enforceable against the insured, who did not learn, until it was too late, that he had an obligation to make a claim within specific deadlines.[3]

---

[3] The court in *Colton* also addressed the statutory corroboration requirement, now expressed in ORS 742.504(2)(g)(B), and concluded that the facts in the record

The court determined that the claim reporting deadline was unenforceable against the claimant, even though, as the court acknowledged, the statute in question made the notice of the claim "a condition precedent to any liability on the part of the insurer." *Id.* at 219. In support, the court cited, among other items of evidence, the failure of the policy to refer to phantom vehicle coverage or any notice requirement and the fact that the insured never saw the insurance policy and would not have learned of his notification duty if he had read the policy.

*Colton* is significant to our present analysis for two reasons. First, that case confirms that policy wording that, in general terms, purports to bring the policy into compliance with unstated statutory requirements is not sufficient to place an insured on notice of statutory requirements concerning delivery of notice of the claim and the pertinent deadline for that notice. Second, that case indicates that this court will not enforce the notice of claim requirement if the insured had no knowledge of that requirement and could not have learned of it from reading the insurance policy.

*North River Insurance* and *Colton*, considered together, indicate that, when this court has addressed disputes over an insured's noncompliance with proinsurer notice provisions concerning uninsured motorist coverage, the court's first inquiry is whether the policy terms specifically disclose the disputed notice obligation. *Colton* indicates that an insurer's attempt to incorporate or borrow applicable coverage statutes in general terms will not suffice to confirm the insured's specific agreement to notice obligations that the incorporated or borrowed statutes may describe more particularly.

Finally, in *Turlay v. Farmers Insurance Exch.*, 259 Or 612, 488 P2d 406 (1971), the insured filed a claim for uninsured motorist coverage long after the policy deadlines for police notification and for claiming benefits had expired. The insurer declined coverage, relying on the insured's failure to timely notify either the police of the accident or the insurer of

---

satisfied the corroboration element. *Id.* at 216-18. For a more recent discussion of the statutory corroboration requirement, see *To v. State Farm Mutual Ins.*, 319 Or 93, 873 P2d 1072 (1994).

the claim. The trial court rejected those defenses and entered judgment for the plaintiff.

This court affirmed, citing the plaintiff's lack of knowledge that a hit-and-run driver was involved. *Id.* at 621-22. *Turlay* thus indicates that the insured's duty to notify the police of an accident is excusable if the facts demonstrate that, at the pertinent time, the insured had no knowledge or notice that the duty is applicable.

The foregoing cases confirm this court's tentative reading of the text of ORS 742.504, described above. We are aware of no other contextual sources that undermine that statutory construction.

We conclude that our tentative reading of the statute, described earlier, correctly reflects the intent of the legislature. Because the legislature's intent is clear, we proceed to apply the statute to the circumstances in this case.

The broad incorporation in TriMet's ordinance of the uninsured motorist coverage statute, ORS 742.504, by legal citation did not provide notice to a claimant under the ordinance, such as plaintiff, of the 72-hour police notification requirement in ORS 742.504(2)(g)(C) for phantom vehicle coverage. Because TriMet chose not to state that requirement specifically in the ordinance, the court will not read that requirement into the ordinance by interpretation. Noncompliance with the police notification requirement can result in a loss of phantom vehicle coverage. Although TriMet is entitled to exclude that permissive requirement from the ordinance if it desires, *Vega*, 323 Or at 302, it cannot exclude it and later attempt to enforce it against plaintiff without running afoul of the "no less favorable" provision in ORS 742.504.

*Vega* concluded that an insurer's "exhaustion of benefits" policy provision added a contract term that disfavored insureds in a way that the "no less favorable" requirement in ORS 742.504 prohibited. According to the court in *Vega*,

> "The exhaustion provision is, consequently, unenforceable, and it cannot bar plaintiffs' recovery."

*Id.* at 303.

We similarly conclude that the police-notification requirement set out in ORS 742.504(2)(g)(C) states a condition that disfavors insureds. Plaintiff could not have discerned that notice condition by reading the specific terms of TriMet's ordinance. As in *Vega*, the police-notification requirement is unenforceable against plaintiff, and it cannot bar plaintiff's recovery.

From the foregoing, we conclude that the trial court erred in granting summary judgment to TriMet.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.