Argued and submitted September 3, certified question answered December 2, 1993, reconsideration denied February 8 and March 8, 1994

# CASH FLOW INVESTORS, INC.,
*Plaintiff,*

*v.*

# UNION OIL COMPANY OF CALIFORNIA,
a California corporation, dba Unocal,
*Defendant.*

(USDC Civil 92-321-MA; SC S40159)

862 P2d 501

Roger Tilbury, Portland, argued the cause for plaintiff. With him on the brief were Robert P. Johnson, Roch Steinbach, and Roger McAulay, Certified Law Student, Portland.

John Dudrey, of Williams, Fredrickson & Stark, P.C., Portland, argued the cause for defendant. With him on the brief was Michael D. Williams.

Rex Armstrong, of Bogle & Gates, Portland, argued the cause for *amicus curiae* McDonald's Corporation. With him on the brief were Richard A. Hayden and Christopher L. Reive.

John D. Burns, Gregory A. Chaimov, and Jerry B. Hodson, of Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief on behalf of *amicus curiae* Mobil Oil Corporation.

GRABER, J.

## GRABER, J.

This case comes to us on a certified question from the United States District Court for the District of Oregon.[1] That court stated the relevant facts as follows:

"Plaintiff sought contribution from defendant Union Oil Company of California under ORS 465.255(5)(b) for its costs incurred in a state-mandated cleanup of a former gas station site [contaminated by gasoline that had leaked from underground storage tanks]. Plaintiff was the owner of the underlying property and defendant was formerly the franchisor of the gas station and lessee of the property.

"After trial of two and one-half days, this court held defendant to be strictly liable under ORS 465.255(1)(a) for contribution to plaintiff's 'remedial action costs.'

"The court found plaintiff's reasonable remedial action costs, for tank removal, excavation and trucking of the contaminated soil, and geotechnical services, [were] $107,720. Applying equitable considerations as mandated by ORS 465.325(6)(a), the court determined that defendant must pay 75% of those costs."

Consequently, plaintiff's recoverable damages, after equitable apportionment, were $80,790. Judgment was entered for that sum, plus prejudgment interest.

Thereafter, plaintiff submitted two petitions for attorney fees. The first was for "pre-litigation" fees, that is, fees incurred incident to negotiations with the Oregon Department of Environmental Quality (DEQ) during the course of the cleanup. The second petition asked for "litigation" fees and related expenses incurred in prosecuting the statutory contribution claim against defendant. It is the second fee petition that occasioned the certification of the question herein.

■ We restate the certified question,[2] for the sake of simplicity:[3] "Do 'remedial action costs' as defined in ORS

---

[1] *See* ORS 28.200 to 28.255 (statutes providing for certification of certain questions of law from federal court to Oregon Supreme Court).

[2] The question as certified was:

"Does the Oregon Hazardous Waste Act, ORS 465.200 to 465.455, and 465.900, authorize the recovery of reasonable litigation attorney fee incurred in a successful prosecution of a private contribution action brought to recover 'remedial action costs' pursuant to ORS 465.255(5)(b) and 465.325(6), where the 'remedial action costs' recoverable are defined in ORS 465.200(16) as

465.200(16) [set out below] include attorney fees incurred by a private party in a successful contribution proceeding under ORS 465.255 and 465.325(6) against another private party to recover environmental cleanup expenses?"

The general rule in Oregon is that

"[t]he right to recover attorney's fees from an opponent in litigation does not exist at common law. The general rule is that such an item of expense is not allowable in the absence of a statute or some agreement expressly authorizing the allowance of attorney's fees." *Draper v. Mullennex*, 225 Or 267, 271, 357 P2d 519 (1960) (citations omitted).

*Accord*: *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). The exceptions to the general rule are narrowly construed. As this court explained in *Lewis v. Dept. of Rev.*, 294 Or 139, 142, 653 P2d 1265 (1982):

"We start with the general rule that attorney fees are not recoverable in the absence of a statute or contractual provision authorizing the award. In *Riedel v. First National Bank*, 287 Or 285, 290-91, 598 P2d 302 (1979), we quoted with approval the following language from *Hughes v. Bembry*, 256 Or 172, 177-78, 470 P2d 151 (1970):

" 'We have adopted a narrow policy on the allowance of attorney fees and held that they will not be allowed unless *expressly authorized* by a statute or a contract.' (Emphasis added by our decision in *Riedel, supra*.)"

■ Moreover, this court has established a method of construing statutes, which we apply to the statute under consideration. Our task is to ascertain the intention of the legislature when it enacted ORS 465.200(16). *See* ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (in interpreting a statute, this court's task is to discern the intent of the legislature). In determining the intent of the legislature, we begin with the text and context of the provision. ORS 174.010; *PGE v.*

'reasonable costs which are attributable to or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, legal or enforcement activities, contracts and health studies'?"

³ *See Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 370, 811 P2d 627 (1991 ("this court * * * has the discretion to reframe questions and is not bound to answer the question as certified").

*Bureau of Labor and Industries, supra,* 317 Or at 610. Other provisions of the same statutory scheme are part of that context. *Id.* at 611. Whenever possible, provisions of a statute are construed so as to give effect to each. ORS 174.010; *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611.

ORS 465.200(16) provides:[4]

" 'Remedial action costs' means reasonable costs which are attributable to or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, legal or enforcement activities, contracts and health studies."

■ The words "remedial" and "action" are words that can, in some contexts, refer to legal proceedings. However, the context here — related provisions of the Hazardous Waste and Hazardous Materials Act, ORS chapter 465 (the Act) — establishes that a legal proceeding for contribution to recover environmental cleanup costs is not a "remedial action," the costs of which would be "remedial action costs."

ORS 465.200(15) defines "remedial action":

" 'Remedial action' means those actions consistent with a permanent remedial action taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of a hazardous substance so that it does not migrate to cause substantial danger to present or future public health, safety, welfare or the environment. 'Remedial action' includes, but is not limited to:

"(a) Such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative drinking and household water supplies, and any monitoring reasonably required to assure that such actions

---

[4] ORS 465.200 was enacted in 1987 as ORS 466.540. Or Laws 1987, ch 539, § 2; Or Laws 1987, ch 735, § 1. It was renumbered as ORS 465.200 in 1989; minor amendments, not material here, also were made to the provision in 1989.

protect the public health, safety, welfare and the environment.

"(b) Offsite transport and offsite storage, treatment, destruction or secure disposition of hazardous substances and associated, contaminated materials.

"(c) Such actions as may be necessary to monitor, assess, evaluate or investigate a release or threat of release."

■ ORS 465.200(15), defining "remedial action," refers to and enumerates various physical or technological methods of preventing, minimizing, or controlling a release[5] or threatened release of a hazardous substance from a facility into the environment. The term "remedial action" as used in the Act thus pertains only to the *actual physical process or processes* of remedying such a release. *See also* ORS 465.250(2)(c) (where there is a reasonable basis to believe that there may be a release of a hazardous substance at a facility, DEQ may enter the facility to "carry out removal or remedial action"); ORS 465.315 (a "remedial action" "shall attain a degree of cleanup of the hazardous substance and control of further release * * * that assure protection of present and future public health, safety, welfare and of the environment"; director of DEQ shall select a "remedial action" that protects human health and the environment, is cost effective, and uses permanent solutions and alternative treatment or resource recovery technologies); ORS 465.320 (before approving a "remedial action," DEQ shall publish a notice and brief description of the proposed action and provide time for, and consider, public comment on the action); ORS 465.325-(7)(d)(E) (in entering an agreement to perform a "remedial action," the director of DEQ may provide a person subject to the agreement with a covenant not to sue; in assessing the appropriateness of such a covenant, the director shall consider "[t]he extent to which the technology used in the * * * remedial action is demonstrated to be effective").

A statutory contribution proceeding by a private party against another private party to recover environmental cleanup expenses is not, then, a "remedial action." ORS 465.200(16) defines "remedial action costs," however, to

---

[5] The term "release" is defined in part as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment." ORS 465.200(14).

include "costs of * * * legal and enforcement activities" that are "attributable to or associated with" a remedial action. And, "costs of * * * legal and enforcement activities" may be read to include attorney fees in some situations. The question therefore remains whether litigation expenses in a contribution proceeding are "attributable to or associated with" a remedial action.

■　　　Again, the statutory context answers that question. The fact that, in the context of the Act, the term "remedial action" pertains to the *actual physical process or processes* undertaken in response to a release or threatened release of hazardous substances suggests that the term "remedial action costs" in ORS 465.200(16) refers only to those costs — including costs of legal and enforcement activities — "attributable to or associated with" the carrying out of that *physical process*, and not to costs "attributable to or associated with" a *separate legal proceeding* to recover, from another party, the expenses of having carried out the physical process — that is, a claim to shift the financial burden of the cleanup.

■　　　The sections of the Act relating specifically to contribution claims strongly support the same inference. ORS 465.255 provides in part:

"(1)　The following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility * * *:

"(a)　Any owner or operator at or during the time of the acts or omissions that resulted in the release.

"* * * * *

"(5)(b)　A person who is liable [for remedial action costs] under this section shall not be barred from seeking contribution from any other person for liability under ORS 465.200 to 465.455 and 465.900."

ORS 465.325(6) provides in part:

"(a)　Any person may seek contribution from any other person who is liable or potentially liable under ORS 465.255. In resolving contribution claims, the court may allocate remedial action costs among liable parties using such equitable factors as the court determines are appropriate.

"* * * * *

"(c)(B)  A person who has resolved its liability to the state for some or all of a removal or remedial action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (b) of this subsection."

ORS 465.255 and 465.325 appear to contemplate, in their manner of addressing "remedial action costs," that the amount of those costs in relation to a particular release or threatened release of hazardous substances is complete and is known to the parties *at the time that a contribution claim is made*. The amount of attorney fees that will be incurred in the legal proceeding based on the contribution claim is not complete and is not known at the time the claim is made.

■    Finally, other provisions of the Act expressly provide for recovery of attorney fees in certain types of legal proceedings that follow the completion of a "remedial action." *See* ORS 465.330(3) (if the state's "remedial actions costs" are not paid by the liable party within 45 days, the state shall bring an "action" to recover the amount owed, "plus reasonable legal expenses"); ORS 465.325(10) (on completion of a "remedial action," a private party shall request certification of completion from DEQ; a party aggrieved by DEQ's certification decision may seek judicial review of that decision; the court may award "attorney fees and costs" of the appeal to the prevailing party). By negative implication, attorney fees are *not* available in *other* types of legal proceedings. *See* ORS 174.010 (in construing a statute, court is not to insert what has been omitted); *see also Samuel v. Frohnmayer*, 308 Or 362, 370, 779 P2d 1028 (1989) ("Where a particular statute * * * provides for a remedy such as the award of attorney fees by a court to a successful litigant, and where that statute establishes particular conditions for its application, it is inappropriate for a court to import into another, more general statute * * * the same or even broader authority to award attorney fees."); *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981) ("when the legislature includes an express provision in one statute, but omits such a provision in another statute, it may be inferred that such an omission was deliberate").

We conclude that "remedial actions" are distinct from legal proceedings by private parties to recover environmental cleanup expenses from other private parties and that the litigation costs of prosecuting a statutory contribution claim are not "attributable to or associated with" remedial actions within the meaning of ORS 465.200(16). Considered in context, the "express language in the statute," *Samuel v. Frohnmayer, supra,* 308 Or at 367, does not authorize an award of attorney fees here.

Plaintiff argues that, even if this court determines that ORS 465.200(16) does not authorize the recovery of attorney fees incurred by a private party in a successful contribution proceeding to recover environmental cleanup expenses from another private party, the recovery of such fees would give effect to the general remedial purpose of ORS 465.200 to 465.455 and 465.900. *See, e.g,* ORS 465.205 (finding that the release of hazardous substances into the environment may present a threat to public safety, stating that it is in the interest of the public that the legislature provide the means to minimize such hazards, and stating that the purpose of the Act is to provide sufficient funding to DEQ to enable it to abate such hazards); ORS 465.270 (finding that costs of cleanup may result in economic hardship for individuals and businesses and establishing a financial assistance program to alleviate that hardship). Those *general* statements, however, do not outweigh contextual analysis relating to the *specific* question presented. *See* ORS 174.020 ("when a general and particular provision are inconsistent, the latter is paramount to the former"); *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611 (same). The text and context of ORS 465.200(16) demonstrate that the legislature did not intend to allow for recovery of attorney fees in the circumstance at issue.

We hold that "remedial action costs" as defined in ORS 465.200(16) do not include attorney fees incurred by a private party in a successful contribution proceeding under ORS 465.255 and 465.325(6) against another private party to recover environmental cleanup expenses.

Certified question answered.