Argued and submitted January 6, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed and case remanded to the circuit court for further proceedings May 26, 1994

Kiem TO
and Chuc Nguyen,
*Respondents on Review,*
*and*

Cung NGUYEN,
*Plaintiff,*

*v.*

STATE FARM MUTUAL INSURANCE,
a foreign corporation,
*Petitioner on Review,*
*and*

John DOE,
an uninsured motorist,
*Defendant.*

(CC 9012-08224; CA A72878; SC S40747)

873 P2d 1072

Billy M. Sime, of Parks, Bauer & Sime, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition was J. Philip Parks.

Michael H. Bloom, Portland, argued the cause and filed the response for respondents on review.

GILLETTE, J.

Graber, J., dissented and filed an opinion.

## GILLETTE, J.

This declaratory judgment action involves the statutorily required uninsured motorist coverage provided in a motor vehicle liability policy issued by defendant State Farm Mutual Insurance. Three persons asserted claims under that coverage for injuries sustained in an accident allegedly caused by a "phantom vehicle." After defendant denied coverage because of the lack of evidence corroborating the claimants' version of the accident, one of the claimants released his uninsured motorist claim against defendant. The remaining claimants then argued that the testimony of the releasing claimant could be used to corroborate their version of the accident, thereby establishing coverage. The trial court disagreed and granted judgment in defendant's favor. The Court of Appeals reversed and remanded. *To v. State Farm Mutual Ins.*, 123 Or App 404, 860 P2d 294 (1993). We allowed review and now affirm in part and reverse in part the decision of the Court of Appeals.

In January 1989, Chuc Nguyen and Cung Nguyen were passengers in an automobile being driven eastbound on Highway 22 by Kiem To, Chuc Nguyen's husband. According to the three adult occupants of the automobile,[1] a large truck traveling westbound crossed the centerline in front of them, causing Kiem To to swerve in order to avoid a head-on collision. Kiem To lost control of the automobile, which then went over an embankment, injuring all three adults.

At the time of the accident, the automobile was insured by a motor vehicle liability policy issued to Kiem To and Chuc Nguyen by defendant. That policy provided that defendant would "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle." (Emphasis deleted.) The policy further provided:

"Uninsured Motor Vehicle — means:

"* * * * *

"3. a 'phantom motor vehicle' which is a land motor vehicle:

"a. whose owner or driver remains unknown;

---

[1] Three children also were in the car at the time of the accident.

"b.  that causes bodily injury to the insured; and

"c.  that does not strike either the insured or the vehicle the insured is occupying.

"*There must be proof of the facts of the accident other than the testimony of the insured or any other person who has a claim under this coverage.*"

(Emphasis supplied and deleted.) The parties agree that the foregoing policy provision is equivalent to the statutory "phantom vehicle" provision in ORS 742.504(2)(g), set out *infra*.[2]

After the accident, all three adults made claims against defendant under the uninsured motorist coverage described above. Defendant denied coverage, and the three adults commenced the present action seeking a declaration that coverage exists. Defendant moved for summary judgment, arguing that plaintiffs could not provide the necessary corroborating evidence of the accident required by the policy and ORS 742.504(2)(g)(B). Subsequently, plaintiff Cung Nguyen sought an order of dismissal with prejudice. The trial court entered a judgment dismissing him from the action with prejudice. Cung Nguyen then testified in a deposition that he released all rights to any claim against defendant for injuries resulting from the accident. Cung also testified that the accident had been caused by the "phantom" truck. The two remaining plaintiffs, Kiem To and Chuc Nguyen, then opposed defendant's motion for summary judgment and moved for summary judgment themselves on the ground that Cung Nguyen's testimony could be used to corroborate their claims.[3] The trial court disagreed with plaintiffs and entered judgment for defendant.

---

[2] Under ORS 742.504, motor vehicle liability policies in Oregon must provide uninsured motorist coverage that is "no less favorable in any respect to the insured or the beneficiary than if the [statutory provisions of ORS 742.504] were set forth in the policy." None of the parties in this case argues that the uninsured motorist coverage provided by defendant was intended to be either more or less favorable than that provided by the statutory provisions. We also note that the policy provides that, "[i]f any terms of this policy are in conflict with the statutes of Oregon, they are amended to conform to these statutes."

[3] Initially, all three plaintiffs had sought to rely for corroboration on testimony by one of the children in the automobile at the time of the accident. Plaintiffs Kiem To and Chuc Nguyen abandoned that approach after Cung Nguyen's dismissal from the case. Plaintiffs have stipulated that Cung Nguyen's testimony is the only evidence available to corroborate their version of the accident.

Plaintiffs appealed, arguing that the trial court erred in granting defendant's motion for summary judgment and in denying their motion. The Court of Appeals first noted that the resolution of defendant's motion for summary judgment depended on the proper interpretation of ORS 742.504(2)(g). The court then held that, because "[t]he statute uses the present tense, 'having a claim,' not the past perfect, 'having had a claim,' * * * only the testimony of someone 'having a claim' at the time the testimony is offered is insufficient to corroborate the facts of a phantom vehicle accident." *To v. State Farm Mutual Ins., supra*, 123 Or App at 408. It followed, the court ruled, that the trial court erred in granting summary judgment to defendant. The Court of Appeals further held, however, that the trial court did not err in denying plaintiffs' motion for summary judgment, because "[a] reasonable factfinder could infer from [information in Cung Nguyen's deposition] that Cung Nguyen was a biased witness." *Id.* at 411. Accordingly, the Court of Appeals reversed the judgment in favor of defendant and remanded the case to the trial court. We allowed defendant's petition for review in order to consider the proper interpretation of ORS 742.504(2)(g).

At the outset, we note that, technically, this case involves the interpretation of the "phantom motor vehicle" provision contained in the motor vehicle liability *policy* issued to plaintiffs by defendant. As previously noted, however, the parties agree that the policy provision is equivalent to the statutory "phantom vehicle" provision in ORS 742.504(2)(g). Accordingly, for the purpose of our analysis, the resolution of this case depends on the proper interpretation of that statute. *Cf. Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 244-45, 855 P2d 626 (1993) (where a provision in an insurance contract is required by the legislature, the intent of the legislature, rather than the intent of the parties, controls).

ORS 742.502 requires motor vehicle liability policies issued in Oregon to include uninsured motorist coverage. Under the statutory coverage provisions set out in ORS 742.504, the insurer promises to compensate the insured for injuries resulting from an accident caused by an "uninsured vehicle." ORS 742.504(1)(a). For purposes of the statutory uninsured motorist coverage, a "phantom vehicle" is an

"uninsured vehicle." ORS 742.504(2)(d)(C). To qualify as a "phantom vehicle," a vehicle must meet several requirements, which are set out in ORS 742.504(2)(g). That statute provides:

" 'Phantom vehicle' means a vehicle which causes bodily injury to an insured arising out of a motor vehicle accident which is caused by an automobile which has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident, provided:

"(A)  There cannot be ascertained the identity of either the operator or the owner of such phantom vehicle;

"(B)  *The facts of such accident can be corroborated by competent evidence other than the testimony of the insured or any person having an uninsured motorist claim resulting from the accident*; and

"(C)  The insured or someone on behalf of the insured shall have reported the accident within 72 hours to a police, peace or judicial officer, to the Department of Transportation of the State of Oregon or to the equivalent department in the state where the accident occurred, and shall have filed with the insurer within 30 days thereafter a statement under oath that the insured or the legal representative of the insured has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof."

(Emphasis supplied.)

The corroboration requirement in ORS 742.504(2)-(g)(B) is the source of the issue in this case. Plaintiffs argue that the phrase "any person having an uninsured motorist claim" refers to a person who, at the time that corroborating testimony is given, still has a claim that could be maintained against the insurer. Under plaintiffs' construction of the statute, Cung Nguyen's testimony is legally sufficient to corroborate their version of the accident and to establish coverage of their claims, because Cung Nguyen is no longer a "person having an uninsured motorist claim resulting from the accident," due to his abandonment of his right to make a claim against defendant. Defendant argues, on the other hand, that the phrase "any person having an uninsured motorist claim" refers to a person who has such a claim at the time of the accident. Under defendant's construction of ORS

742.504(2)(g)(B), Cung Nguyen's testimony is not legally sufficient corroborating evidence because, at the time of the accident, Cung Nguyen was a person "having an uninsured motorist claim resulting from the accident."

■    In interpreting a statute, this court's task is to determine the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin with the text and context of the statute in question. *Id.* at 610-11. Context includes "other provisions of the same statute and other related statutes." *Id.* at 611.

■    When read in isolation, the phrase "any person having an uninsured motorist claim" is susceptible to both of the interpretations offered by the parties in this case, because the phrase is not modified by any express temporal qualification. When read in the context of ORS 742.504(2)(g)(B) as a whole, however, the operative phrase is most reasonably read as referring to a person who has an uninsured motorist claim at the time that the applicability of uninsured motorist coverage to the accident in question is being determined — *i.e.*, at the time that the person's testimony is offered to corroborate the facts of the accident as asserted by the party seeking to establish coverage.

By its terms, ORS 742.504(2)(g)(B) permits the use of "testimony" as corroborating evidence of a "phantom vehicle" accident, provided that the person whose testimony is offered is neither "the insured" nor "any person having an uninsured motorist claim resulting from the accident." By the terms of the statute, then, the *status* of the person whose testimony is offered determines whether that testimony is legally sufficient corroborating evidence. Logically, the legal sufficiency of particular testimony is determined at the time that the testimony is offered. Thus, the legal sufficiency of testimony offered to corroborate a "phantom vehicle" accident is determined at the time that the party seeking to establish uninsured motorist coverage of the accident offers that testimony. Likewise, the predicate for that determination of legal sufficiency — *i.e.*, the status of the person whose testimony is being offered — is determined at that time, as well. In other words, the determination of whether a particular corroborating witness is a "person having an uninsured motorist claim resulting from the accident" is made at the

time that the witness's testimony is offered to corroborate the facts of the "phantom vehicle" accident. In light of the foregoing, and in the absence of any express temporal qualification in the statute itself, the text of ORS 742.504(2)(g)(B) is most reasonably read as referring to a person who has an uninsured motorist claim at the time that that person's testimony is offered to corroborate the facts of the "phantom vehicle" accident and to establish uninsured motorist coverage of the accident.

The immediate context of ORS 742.504(2)(g)(B) supports the foregoing reading of the text of the statute. The corroboration requirement in ORS 742.504(2)(g)(B) is one of three provisos set out in ORS 742.504(2)(g) that limit the circumstances in which a particular vehicle will qualify as a "phantom vehicle" and, therefore, as an "uninsured vehicle" for purposes of uninsured motorist coverage. All three provisos come into play when the determination of insurance coverage is being made and are most reasonably read as speaking to the time of that determination.

For example, ORS 742.504(2)(g)(A) provides that a vehicle is a "phantom vehicle" only if "the identity of either the operator or the owner of such * * * vehicle" "cannot be ascertained." Whether the identity of the operator or owner of the "phantom vehicle" can be ascertained must be determined at the time that the determination of uninsured motorist coverage is being made. That is so because, if the identity of the operator or owner is known when the existence of insurance coverage is being determined, then any claim for uninsured motorist coverage would have to be based on the lack of insurance or underinsurance of that *known* operator or owner. Such coverage could not be based on the "phantom vehicle" provisions, regardless of whether the identity of the operator or owner was unknown and unascertainable at the time of the accident. The only reasonable reading of subparagraph (A), therefore, is as a reference to the existence of the described circumstance at a time after the time of the accident, *viz.*, the time at which the determination of insurance coverage is being made.

Similarly, the proviso set out in ORS 742.504(2)-(g)(C) is most reasonably read as speaking to a time after the time of accident. That subparagraph provides that, in order

for a vehicle to constitute a "phantom vehicle," and therefore for uninsured motorist coverage to exist, "[t]he insured * * * shall have reported the accident within 72 hours" to certain persons and "shall have filed" a statement with the insurer within 30 days. Use of the past perfect tense in subparagraph (C) to refer to the reporting of the accident indicates that, at the time to which *that* subparagraph speaks, the accident and the reporting are completed events. Indisputably, subparagraph (C) speaks to a time *after* the accident.

In the absence of an express temporal qualification in the text of ORS 742.504(2)(g)(B) itself, we believe that the corroboration requirement set out in that subparagraph should be read consistently with the companion requirements set out in subparagraphs (A) and (C). Accordingly, we conclude that, based on text and context, the operative phrase in ORS 742.504(2)(g)(B) — "any person having an uninsured motorist claim resulting from the accident" — is most reasonably read as referring to a person who has such a claim at the time that the determination of uninsured motorist coverage is being made — *i.e.*, the time when the person's testimony is offered to corroborate the facts of the "phantom vehicle" accident — rather than to a person who has such a claim at the time of the accident.

The foregoing analysis of text and context is not conclusive, however. Although we believe that our reading of ORS 742.504(2)(g)(B), based on the text and context of the statute, is the most reasonable reading of the statute, it is not necessarily the only plausible reading. It is at least possible, as the dissent contends, that the legislature intended the statute to refer to a person having an uninsured motorist claim at the time of the accident, even if that claim were abandoned later. When text and context do not make the legislature's intent clear, this court looks to legislative history to inform its inquiry. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611-12. In this context, we look to legislative history to determine whether anything in that history dissuades us from adhering to the reading of the statute that we have determined to be most reasonable based on text and context. In this case, consideration of the relevant legislative history does little to inform our inquiry into the legislature's intent

and does nothing to alter our interpretation of the statute based on text and context.

Our consideration of the legislative history of ORS 742.504(2)(g)(B) has not revealed to us the several "themes" that the dissent purports to find in that history. The one theme that *fairly* may be said to emerge from that history is that, at whatever time is the critical one, the legislature intended that the corroborating witness be someone who has no personal interest in the outcome of the case. The legislative committee responsible for the statutory wording that is at issue in this case realized that collusion was impossible to avoid completely. The committee settled for defining a class of persons whose temptation to collude was, by definition, so strong that it seemed sensible public policy to limit their involvement in the process. That class was persons having a claim under the policy. The witness here, by abandoning any claim against the defendant insurance company, took himself out of the suspect class and, in doing so, met the criterion expressed in the statute, *i.e.*, he was *not* a "person having an uninsured motorist claim resulting from the accident."

Defendant argues that the foregoing reading of ORS 742.504(2)(g)(B) is inconsistent with the policy behind the corroboration requirement, because that reading of the statute will facilitate the presentation of fraudulent claims. *See Farmers Insurance Exch. v. Colton*, 264 Or 210, 217, 504 P2d 1041 (1972) ("The requirement of corroboration was intended to discourage and prevent fraudulent claims"). Defendant does not contend that fraud is involved in the present case, but contends that the statute should be interpreted so as to preclude, as much as possible, situations where fraud and collusion might exist.

We are not persuaded by defendant's argument. The statement in the *Colton* case on which defendant relies was not one purporting to construe specific statutory language in ORS 742.504(2)(g)(B) under circumstances like those presented here. Instead, it was a general description of the kind of concern that led the legislature to fashion the corroboration requirement in that statute. Defendant is asking this court to substitute general statements about the policy concerns that led to the statute's enactment for the specific

language that the legislature chose to enact. Such substitution would not comport with this court's well-established methodology for statutory interpretation. *Cf. Cash Flow Investors, Inc. v. Union Oil Co.*, 318 Or 88, 96, 862 P2d 501 (1993) (general statements of statutory purpose do not outweigh contextual analysis relating to specific question presented).

We hold that whether proffered testimony is from a "person having an uninsured motorist claim" within the meaning of ORS 742.504(2)(g)(B), and therefore can be legally sufficient, corroborative testimony, is determined at the time that the testimony is offered, either in support of or in opposition to a motion for summary judgment or at the time of trial. It is not determined at the time of the accident.

From the foregoing, it follows that the trial court erred in granting defendant's motion for summary judgment. Because Cung Nguyen had released any uninsured motorist claim against defendant insurance company resulting from the alleged "phantom vehicle" accident, he no longer was a "person having an uninsured motorist claim" within the meaning of ORS 742.504(2)(g)(B). Accordingly, Cung Nguyen's testimony was legally sufficient, under the statute, to corroborate the facts of the "phantom vehicle" accident. The Court of Appeals was correct in so concluding.

One issue remains. In their response to defendant's petition for review in this court, plaintiffs contend that the Court of Appeals erred in its decision on their cross-motion for summary judgment. Plaintiffs moved for summary judgment on the issue of "liability." *See* ORCP 47 C ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."). As noted above, the Court of Appeals concluded that the trial court did not err in denying plaintiffs' motion, because "[a] reasonable factfinder could infer from [information in Cung Nguyen's deposition] that Cung Nguyen was a biased witness." *To v. State Farm Mutual Ins., supra*, 123 Or App at 411. On review, plaintiffs argue that "[m]ore than an issue of credibility is needed to defeat a summary judgment motion." They contend that they are entitled to summary judgment on the issue of "liability," because defendant did not produce any conflicting evidence as

to how the accident occurred. Under the particular circumstances of the present case, we agree.

■        On a motion for summary judgment, "[t]he moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). In this case, plaintiffs attempted to meet that requirement by providing the unequivocal deposition testimony of Cung Nguyen to corroborate their own testimony as to how the "phantom vehicle" accident occurred. Defendant did not submit any conflicting evidence and did not claim that Cung Nguyen's testimony was itself contradictory. Nonetheless, the Court of Appeals held that summary judgment was inappropriate, because Cung Nguyen's credibility was subject to question due to possible bias.

This court has never before addressed the question of whether, or under what circumstances, the credibility of a witness whose affidavit is offered in support of a motion for summary judgment under ORCP 47 can give rise to a "genuine issue of material fact" that will preclude entry of summary judgment. That issue has been addressed by the federal courts under FRCP 56 — the rule upon which ORCP 47 was based[4] — but "[q]uestions of credibility have given the [federal] courts considerable difficulty." 10A Wright, Miller, and Kane, Federal Practice and Procedure 115, § 2726 (2d ed 1983); *see also* Sonenshein, *State of Mind and Credibility in the Summary Judgment Context: A Better Approach*, 78 NW Univ L R 774, 780 (1984) (noting that "[j]udicial uncertainty over the appropriateness of summary judgment has arisen * * * when the credibility of the movant is attacked"). In the federal courts, "the general rule is that specific facts must be produced in order to put credibility in issue so as to preclude summary judgment. Unsupported allegations that credibility is in issue will not suffice." Wright, Miller, and Kane, *supra*, at 118-19 (footnote omitted); *see also* Sonenshein, *supra*, at 798 (a "widely accepted approach permits the nonmovant to advance to trial only when a particularized showing of the

---

[4] ORCP 47 was based on *former* ORS 18.105. Oregon Rules of Civil Procedure: 1994 Handbook 135 (1993). That statute, in turn, was based on FRCP 56. *Garrison v. Cook*, 280 Or 205, 209, 570 P2d 646 (1977).

ground for contradiction or impeachment has been made"). If the nonmoving party produces specific facts related to the affiant's credibility, then summary judgment may be inappropriate, particularly in cases like the present one where "the knowledge of the events or occurrences on which the action is based lies exclusively within the control of the party moving for summary judgment." Wright, Miller, and Kane, *supra*, at 120.[5]

Under the particular procedural circumstances of this case, however, we need not decide, as the Court of Appeals purported to do, whether a challenge to Cung Nguyen's credibility based on alleged bias would be sufficient to raise a genuine issue of material fact precluding summary judgment. This is so, because defendant has *never* challenged Cung Nguyen's credibility, either in the trial court, in the Court of Appeals, or in this court. Throughout the course of this proceeding, defendant's *sole* argument in opposition to plaintiffs' cross-motion for summary judgment has been the same corroboration argument that it used to support its own motion for summary judgment, *i.e.*, it has been an argument over a particular issue of law.

We have held already that Cung Nguyen's testimony was legally sufficient corroborating evidence under ORS 742.504(2)(g)(B). Accordingly, we have rejected defendant's only argument in opposition to plaintiffs' motion. Given that

---

[5] We emphasize that this is not a case involving the use of a *party's* affidavit to support summary judgment in that party's favor, and we express no opinion as to the permissibility of such use. The theoretical conflict between acceptance of affidavits for the purposes of summary judgment, on the one hand, and the preservation of the right to challenge credibility, on the other, reaches its zenith in cases in which the affiant is a party or other person directly interested in the outcome. Professor Brunet has described the problem this way:

"[C]ommentators have expressed concern about reliance on the affidavits of interested parties. * * * Professor Bauman unqualifiedly regards affidavits as 'the poorest type of evidence, * * * because the affiant is immunized from the test of cross-examination.' Professor Louis urges that a motion for summary judgment 'be denied if the credibility of a witness is inherently suspect because he is interested in the outcome of the case * * *.' Similarly, Sonenshein discourages use of interested party materials in summary judgment by reasoning that 'evidence from an interested or otherwise impeachable witness cannot support a motion for summary judgment, because questions of credibility are for the jury.'"

Brunet, Summary Judgment Materials, 147 FRD 647, 665 (1993) (footnotes omitted).

circumstance, we hold that the trial court erred in denying plaintiffs' cross-motion for summary judgment. The case must be remanded to the trial court with instructions to enter summary judgment for plaintiffs as to "liability," under the uninsured motorist coverage in defendant's policy, and for further proceedings as to amounts that defendant may owe to plaintiffs under that coverage.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

**GRABER, J.,** dissenting.

I dissent. The majority thwarts the legislature's intent by overlooking part of the context of ORS 742.504-(2)(g)(B) and by misreading the relevant legislative history.

### THE CONTEXT OF THE STATUTE POINTS AWAY FROM THE MAJORITY'S INTERPRETATION

ORS 742.504(2)(g) provides:

" 'Phantom vehicle' means a vehicle which causes bodily injury to an insured arising out of a motor vehicle accident which is caused by an automobile which has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident, provided:

"(A)   There cannot be ascertained the identity of either the operator or the owner of such phantom vehicle.

"(B)   The facts of such accident can be corroborated by competent evidence other than the testimony of the insured or *any person having an uninsured motorist claim resulting from the accident*; and

"(C)   The insured or someone on behalf of the insured shall have reported the accident within 72 hours to a police, peace or judicial officer, to the Department of Transportation of the State of Oregon or to the equivalent department in the state where the accident occurred, and shall have filed with the insurer within 30 days thereafter a statement under oath that the insured or the legal representative of the insured has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is

unascertainable, and setting forth the facts in support thereof." (Emphasis added.)

Plaintiffs read subparagraph (B) of that provision as foreclosing corroboration by "any person having an uninsured motorist claim resulting from the accident" *at the time the person testifies.* Defendant argues that the phrase in question forecloses corroboration by "any person having an uninsured motorist claim resulting from the accident" *at the time of the accident.* Both readings require an implicit addition to the statute. Both are plausible in grammar and in context.

As the majority recognizes, the statute that we are called on to construe is ambiguous. The "immediate context" on which the majority relies to support its reading as being the more persuasive one, however, is not plausible. 319 Or at 100-01.

ORS 742.504(2)(g) sets out three requirements for uninsured motorist coverage for a "phantom vehicle" accident. Nothing in the structure or logic of paragraph (g) requires that all three requirements relate to the same time. Subparagraph (C) requires that, within specified time periods *after* an accident, a report and a filing relating to the accident be made to the appropriate entities. The fact that that provision focuses on a time other than the time of the accident reflects, not a choice on the part of the legislature, but merely recognition of the practical reality that such reporting and filing requirements could not physically be met at the time of the accident. That practical consideration is irrelevant to the determination of the legislature's intent in enacting the requirement, in subparagraph (B), relating to corroborating testimony. Similarly, the requirement established in subparagraph (A), relating to ascertainment of the identity of the operator or owner of the vehicle, is substantively unrelated to, and therefore sheds no light on, the requirement set out in subparagraph (B). In short, the three requirements relating to accidents involving phantom vehicles, set out in ORS 742.504(2)(g), are so different from one another that the requirements in subparagraphs (A) and (C) of that provision do not provide a meaningful context for interpreting the requirement in subparagraph (B).

Another portion of the uninsured motorist coverage statute — which the majority does not discuss — provides somewhat more insight into the proper interpretation of ORS 742.504(2)(g)(B). ORS 742.504(2)(f) provides for uninsured motorist coverage for accidents involving "hit-and-run" vehicles, that is, vehicles "which cause[] bodily injury to an insured arising out of physical contact of such vehicle[s] with the insured or with a vehicle which the insured is occupying at the time of the accident." In order for uninsured motorist coverage to apply under that statute, three requirements must be met: the identity of either the operator or the owner of the vehicle must be unascertainable, ORS 742.504(2)(f)(A); the insured must meet certain reporting and filing deadlines relating to the accident, ORS 742.504(2)(f)(B); and, at the insurer's request, the insured must make available for inspection the vehicle which the insured was occupying at the time of accident, ORS 742.504(2)(f)(C).

Two of the three requirements of the hit-and-run vehicle statute directly parallel the requirements of the phantom vehicle statute: the requirements relating to unascertainability of the identity of the owner or operator of the vehicle and the reporting and filing requirements. In addition, the third requirement in the hit-and-run vehicle statute — the requirement that the vehicle be made available for inspection — arguably also parallels the third requirement in the phantom vehicle statute — the requirement that a certain category of witness corroborate the facts of the accident. That is because each of those requirements involves a *means* of corroborating the occurrence and circumstances of the accident. The fact that the means of corroboration relating to accidents involving hit-and-run vehicles involves an examination of circumstances as they existed "at the time of the accident" suggests that the means of corroboration relating to a phantom vehicle accident also properly relates to the circumstances of the accident, *at the time it occurred*. Corroborative testimony for phantom vehicle accidents is the functional equivalent of physical contact for hit-and-run accidents.

Although the foregoing context is helpful, and although it supports defendant's reading of the statute somewhat, it is not conclusive. Therefore, like the majority, I next

examine the legislative history of ORS 742.504(2)(g). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993) (if the text and context of statute do not make clear the intent of the legislature, this court considers the legislative history of statute).

## LEGISLATIVE HISTORY POINTS AWAY FROM THE MAJORITY'S INTERPRETATION

In 1959, the Legislative Assembly enacted Oregon's first statute requiring every motor vehicle liability insurance policy to contain uninsured motorist coverage. Or Laws 1959, ch 413, § 1. That statute (*former* ORS 736.317, *repealed by* Or Laws 1967, ch 482, § 5) did not define "uninsured motorist" or "uninsured vehicle." "As a result, the definition of the term 'uninsured motorist' or 'uninsured vehicle' was frequently litigated." *Lund v. Mission Ins. Co.*, 270 Or 461, 464, 528 P2d 78 (1974). Typically, uninsured motorist policies required physical contact by a "hit-and-run" vehicle before coverage was afforded. *See Turlay v. Farmers Insurance Exch.*, 259 Or 612, 618, 488 P2d 406 (1971) (describing "hit-and-run" provisions of a standard uninsured motorist policy).

In 1967, the legislature responded by enacting a comprehensive revision of the uninsured motorist statutes, House Bill 1506. Or Laws 1967, ch 482, § 3. The bill provided a statutory definition of "uninsured vehicle." *See Lund v. Mission Ins. Co., supra*, 270 Or at 465 (discussing legislative history of the uninsured motorist statutes).[1] In addition, it defined two separate categories of uninsured vehicles, the identity of the operator or owner of which could not be ascertained — "hit-and-run vehicles" and "phantom vehicles" — and eliminated the requirement of physical contact in accidents involving the latter. *See Farmers Insurance Exch. v. Colton*, 264 Or 210, 214-16, 504 P2d 1041 (1972) (noting that change and discussing reasons for it). As a replacement for the requirement of physical contact, the legislature imposed an equivalent requirement, now codified at ORS 742.504(2)(g)(B), relating to testimony by a disinterested witness. The purpose of that requirement, like the purpose of

---

[1] The uninsured motorist statutes have been amended several times since 1967 and now are codified at ORS 742.500 to 742.504.

the requirement of physical contact, was to discourage and prevent fraudulent claims. *See Farmers Insurance Exch. v. Colton, supra,* 264 Or at 215-17 (discussing the 1967 amendments to the uninsured motorist statute).

The House Financial Affairs Committee held a hearing on HB 1506 on May 2, 1967, during which committee members engaged in extensive discussion of the proposed wording of the amendment relating to phantom vehicle accidents.[2] Representative Skelton explained the need for the amendment as follows:

"Let me explain to you again what the phantom car is. The phantom car is a car which forces another car off the highway, causes damages and injuries to the car which was forced off the highway, there is no contact of any cars and the phantom car disappears. Now, theoretically, both the phantom car theory and the hit-and-run theory are aberrations of the uninsured motorist theory. The uninsured motorist theory is that you get into an accident with some other guy * * * and then you are unable to collect from him. * * * The uninsured motorist theory assumes that you are able to find him and bring him to some sort of bar and then he is financially unable to pay. Now the hit-and-run provisions which are put in this * * * law * * * say that if you are hit by a car that then disappears and you never find the identity of him, you can still collect under the uninsured motorist [provision]. The phantom car thing take[s] us one step further and says that if the accident is caused by this guy, whether there is contact between the two of them is a fiction. If he actually caused the accident, * * * the hit-and-run theory should be extended * * * to this situation where the accident actually was caused by this person who disappeared. Now, the hazard in it is there has been collusion and the hazard is not being able to prove it. If you have a hit-and-run at least you have damage to the car. I want to suggest to you however that if the person really is interested in collecting under the uninsured motorist [provision], he could always go out and hit his car after [the accident] with a sledge hammer creating the fiction of the hit-and-run. An honest man who says, 'No, he didn't scrape me when he ran me off the highway, but he just missed me by a fraction of an inch and I missed him, but in dodging to miss him, I struck the * * *

[2] All descriptions of, and quotations from, that hearing are based on Tape Recording, House Financial Affairs Committee, May 2, 1967, Tape 41.

corner light.' I have got a case down on my desk right now * * * where this man was * * * at a four-corner right-angle intersection, a car pulled out in front of this, this other car. The car that had the right of way swerved to miss him, hit a telephone pole, turned around, hit another telephone pole. There were three serious injuries in the car but no contact between the two of them and the car that caused the accident disappeared. * * * If there had been just a fraction of a contact between these two cars, he could have collected. Now there is no contact, and no recovery."

As pertinent to the provision requiring corroboration of an accident involving a phantom vehicle, Representative Skelton proposed that the witness offering corroborative testimony must be "disinterested" and "competent." The committee considered how those terms would apply to *"other passengers" in the car*, including family members and unrelated persons. (Emphasis added.)

One member of the committee asked whether passengers "should be considered competent" to provide corroborating testimony. When the answer was that the unadorned requirement, in the draft amendment, that the person be "disinterested" was unclear, a member of the committee stated, "[P]ut that in. We should, we should sure specify * * * [s]urely, anybody in the car." Another member of the committee stated that "those people in that car are sure interested and * * * I don't think they should be considered to be disinterested." A committee member responded, "There's where your collusion would come in." A committee member then stated, "I think what we ought to do is we ought to exclude any person who stands to get any money as a result."

A member of the committee next suggested that relatives be foreclosed from providing corroboration. Another member objected to the proposal that all "claimants and relatives" be considered interested persons; the member noted the possibility that a relative could be "in another car following" the vehicle involved in the accident.

Further discussion ensued on the purpose of the requirements relating to phantom vehicle accidents. A member stated:

"If they're gonna lie and cheat, they'll do it * * *, but *I think that we should try to tighten this up as tight as possible* to

avoid collusion because we do have some nasty cases of collusion under this [hit-and-run] coverage." (Emphasis added.)

That member later repeated, "I'm not objecting to this endorsement but I just indicate it should be tied up as tight as possible to avoid collusion."

After a brief discussion of the possibility of "leav[ing] it up to the court to decide who was interested and who was competent," a member suggested the phrasing that now is codified at ORS 742.504(2)(g)(B). Another member suggested that the provision exclude "any person injured in the accident and *making* a claim under the uninsured motorist provisions." (Emphasis added.) Without express discussion of the latter suggestion (which resembles somewhat the majority's view in this case), the committee instead agreed to adopt the former.

Several themes emerge from that legislative history.[3] One is that the drafters of the provision generally intended to exclude, from the category of corroborating witnesses, persons occupying the car at the time of the accident if they "stand[] to get any money as a result" of the accident. Another is the theme of timing. The committee discussed various categories of persons who should be foreclosed from providing corroboration. Discussion of all those categories of persons focused on their status and location *at the time of the accident*. Finally, and perhaps most important, the committee expressed strong concern that the provision be worded "as tight[ly] as possible," so as to avoid collusion. Taken as a whole, the described legislative history suggests that the wording ultimately adopted by the legislature for ORS 742.504(2)(g)(B) was intended to exclude a person in the position of the witness in this case.

### THE LOGICAL CONSEQUENCES OF THE COMPETING INTERPRETATIONS POINT AWAY FROM THE ONE CHOSEN BY THE MAJORITY

It bears noting that the majority's interpretation would have the result of creating uncertainty and a lack of

---

[3] The majority rejects my reading of the legislative history, 319 Or at 102, but neither sets out that history nor explains why the majority's cramped construction of it is accurate.

uniform outcomes for similarly situated insureds. At the time the insured and the passengers make claims, an insurer properly may deny coverage. If one claimant later settles, did the insurer deny coverage wrongfully to the others? If one claimant signs a waiver of claims the day after the accident, is the waiver effective to remove the insured and the other claimants from the effect of ORS 742.504(2)(g)(B)? If so, that insured is in a better position than the otherwise similarly situated insured whose passenger declines to sign a waiver of claims. By contrast, if the statute is interpreted to relate to the time of the accident, the application of the statute will be certain and uniform.

Moreover, the majority's interpretation is likely to discourage insurers from settling claims like the one that was settled here. By contrast, if the statute is interpreted to relate to the time of the accident, the incentive to settle would remain.

## CONCLUSION

In enacting ORS 742.504(2)(g), the legislature intended to foreclose corroboration of a "phantom vehicle" accident by any person having, at the time of the accident, an uninsured motorist claim resulting from the accident. The majority's contrary reading of the statute is in error. I would affirm the judgment of the trial court. Therefore, I dissent.