Argued and submitted November 23, 1993, reversed and remanded with instructions
February 22, 1995

## Donald ANDERSON,
*Respondent,*

*v.*

## FIRST FARWEST LIFE INSURANCE CO.,
in liquidation,
*Defendant,*

*and*

## OREGON LIFE AND HEALTH
## INSURANCE GUARANTY ASSOCIATION,
*Appellant.*

(91 CV 10966; CA A79459)

*890 P2d 999*

Patrick N. Rothwell argued the cause for appellant. With him on the briefs was Hallmark, Keating & Abbott, P.C.

Michael W. Anderson argued the cause for respondent. With him on the brief was Freeman, Downing & Granath, P.C.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff brought this action for breach of contract and for a declaration that defendant[1] is obligated to provide insurance coverage under a policy issued by a now-insolvent insurance company. The parties filed cross-motions for summary judgment. The trial court granted plaintiff's motion, denied defendant's motion and entered judgment accordingly. Defendant appeals, and we reverse.

The facts are not in dispute. In 1980, plaintiff purchased a health insurance policy from First Farwest Life Insurance Co. (First Farwest). The policy provides both major medical and catastrophic benefits in the following provisions:

### "DESCRIPTION OF MAJOR MEDICAL BENEFITS AND THE MAXIMUM AMOUNT PAYABLE FOR EACH SPECIFIC BENEFIT

"The Company will pay 80% of the following Eligible Expenses incurred during a Benefit Period for a covered Person for any one injury or any one sickness which are in excess of the Deductible, as defined, subject to the limits herein. The Maximum Amount payable under the Major Medical for each specific category with respect to any one sickness or injury is shown below.

"[List of eligible expense categories with specific maximum amounts totaling $25,000.]

### "DESCRIPTION OF THE CATASTROPHIC PROVISION BENEFITS

"Catastrophic loss benefits will become payable for the Eligible Expenses of a specific category of Eligible Expenses shown in the 'Description of Major Medical Benefits' above when the maximum benefit shown for that specific category of Eligible Expense has been paid under Major Medical.

"Under this provision, the Company will pay 100% of Eligible Expenses, as defined and not excepted in this policy, rather than the 80% provided in the Major Medical section.

"THE BENEFIT PERIOD FOR EACH SICKNESS OR INJURY UNDER THIS PROVISION WILL BE FIVE YEARS FROM THE DATE THAT COVERED EXPENSE

---

[1] Plaintiff also named First Farwest Life Insurance Co. as a defendant, but later dismissed his claims against that party. When we refer to defendant, therefore, we mean Oregon Life and Health Insurance Guaranty Association.

UNDER THIS POLICY IS FIRST INCURRED FOR SUCH SICKNESS OR INJURY. THE AGGREGATE LIFETIME MAXIMUM FOR ALL PAYMENTS UNDER THIS BENEFIT WILL BE THE AMOUNT SHOWN IN THE POLICY SCHEDULE PER COVERED PERSON.

"* * * * *

## "BENEFIT PROVISIONS

"**DEDUCTIBLE:**  The Deductible under this policy shall be the larger of: (a) The stated deductible, or (b) The amount of benefits provided for Eligible Expenses by any other insurance, health and welfare plan or pre-payment arrangement whether provided on an individual or family basis or on a group basis. * * *

"* * * * *

"**BENEFIT PERIOD:**  While the Policy is in force, a Benefit Period begins on the first day of any period of 120 consecutive days during which Eligible Expenses are incurred for a single injury or sickness which exceed the Specific Deductible. The Benefit period will be two years in duration, but if a Covered Person is confined in a hospital at the end of the two years, the Benefit Period will continue until the Covered Person is released from the hospital.

"**SUBSEQUENT BENEFIT PERIODS:**  If a Covered Person incurs Eligible Expense for the same injury or sickness after a Benefit Period has terminated and if all the amounts shown in the Description of Benefits have not been paid, a new Benefit Period will begin if all the conditions for the establishment of the Benefit Period are again satisfied. The maximum benefits for each successive Benefit Period for the same sickness or injury will be those amounts of each specific Lifetime Maximum Benefits which have not previously been used.

"**CONTINUATION OF BENEFITS:**  If coverage on a Covered Person terminates while a Benefit Period for that person is in progress, the Company will pay all benefits otherwise payable under this policy for expenses incurred after termination of coverage and during the remainder of the Benefit Period.

"**COVERAGE FOR COMPLICATIONS OF PREGNANCY:**  If a Covered Person becomes pregnant after becoming a Covered Person and if the pregnancy, childbirth, or miscarriage results in complications, the normal benefits

of this policy will be provided for such complications." (Bold-face in original.)

In 1982, plaintiff was seriously injured and rendered a quadriplegic. First Farwest made attendant care payments under the catastrophic benefits provision of the policy. In 1988, First Farwest informed plaintiff that benefits would cease the following year. In April of 1989, First Farwest was placed in liquidation. Defendant then advised plaintiff that his policy had been canceled and that all benefits would cease. Plaintiff then brought this suit, arguing for continued coverage.

■ We review the trial court's decision to grant plaintiff's motion for summary judgment to determine whether plaintiff has demonstrated that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Park v. Hoffard*, 315 Or 624, 627, 847 P2d 852 (1993). We similarly review the trial court's decision to deny defendant's cross-motion for summary judgment. *To v. State Farm Mutual Ins.*, 123 Or App 404, 410, 860 P2d 294 (1993), *aff'd in part; rev in part on other grounds* 319 Or 93, 873 P2d 1072 (1994); *Cochran v. Connell*, 53 Or App 933, 939, 632 P2d 1385, *rev den* 292 Or 109 (1981).

Defendant argues that the trial court erred in granting plaintiff's motion for summary judgment and in denying defendant's motion, because the language of the catastrophic benefits provision clearly limits the benefit period for each sickness or injury under that provision to "FIVE YEARS FROM THE DATE THAT COVERED EXPENSE UNDER THIS POLICY IS FIRST INCURRED * * *," and plaintiff already has received more than five years of benefits. Plaintiff argues that, although the catastrophic benefits provision contains a benefit period limitation, the policy elsewhere contains a "SUBSEQUENT BENEFIT PERIODS" provision, which allows for extensions of benefit periods, at least until the aggregate lifetime maximum has been exhausted. Defendant counters that the provision allowing extension of benefit periods does not relate to catastrophic benefits, but instead concerns major medical benefits only. Plaintiff rejoins that, at the very least, the policy is ambiguous and should, as a result, be construed against the insurer to provide coverage in this case.

Resolution of this case turns on the interpretation of the language of the insurance policy, which presents a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). The "primary and governing rule" of the interpretation of insurance policies is that we are to ascertain the intentions of the parties, based on the terms and conditions of the policies. *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985); *see also* ORS 742.016.

The Supreme Court has outlined a series of analytical steps to follow in attempting to ascertain what the terms and conditions of a policy are intended to mean. First, we determine whether the terms at issue are defined in the policy or have a meaning that is plain on its face. Second, if the terms are not defined and are susceptible to more than one plausible interpretation, we scrutinize each of the plausible interpretations for reasonableness in the light of the context in which the terms are used and in the light of the other provisions of the policy. In that regard, if one of the interpretations would require us to disregard other provisions of the policy, that interpretation is not reasonable and must be rejected. Third, if the competing interpretations each remain plausible, then we resort to the rule of construction that ambiguities are resolved against the insurer. *Hoffman Construction Co. v. Fred S. James & Co., supra,* 313 Or at 474-75.

The issue in this case is whether the five-year "Benefit Period" described in the catastrophic benefits provision of the policy constitutes the limit of plaintiff's coverage, as defendant urges, or whether the subsequent benefit periods provision extends plaintiff's five-year benefit period until the aggregate lifetime maximum has been exhausted, as plaintiff argues. We begin by examining the language of the disputed provisions.

There are two key provisions. First, in a series of provisions captioned "DESCRIPTION OF THE CATASTROPHIC PROVISION BENEFITS," the policy provides that:

"THE BENEFIT PERIOD FOR EACH SICKNESS OR INJURY UNDER THIS PROVISION WILL BE FIVE YEARS FROM THE DATE THAT COVERED EXPENSE UNDER THIS POLICY IS FIRST INCURRED FOR SUCH

SICKNESS OR INJURY. THE AGGREGATE LIFETIME MAXIMUM FOR ALL PAYMENTS UNDER THIS BENE- FIT WILL BE THE AMOUNT SHOWN IN THE POLICY SCHEDULE PER COVERED PERSON."

Second, in the next section of the policy, captioned "BENE- FIT PROVISIONS," the policy contains a number of provi- sions headed separately, one of which is "SUBSEQUENT BENEFIT PERIODS." That provision reads:

"If a Covered Person incurs Eligible Expense for the same injury or sickness after a Benefit Period has terminated and if all the amounts shown in the Description of Benefits have not been paid, a new Benefit Period will begin if all the conditions for the establishment of the Benefit Period are again satisfied. The maximum benefits for each successive Benefit Period for the same sickness or injury will be those amounts of each specific Lifetime Maximum Benefits which have not previously been used."

Whether the subsequent benefit periods provision operates to extend the five-year benefit period for a cata- strophic loss is not apparent on the face of the policy. There certainly is language in the subsequent benefit periods provi- sion that supports plaintiff's position. Yet, as defendant observes, to read the provision in that way arguably renders the five-year benefit period for catastrophic loss completely meaningless.

We proceed, then, to an examination of those provi- sions in the light of their context and the other provisions of the policy. At the outset, we note that the two provisions are graphically set out in the policy in two separate sections, one concerning "catastrophic" benefits and the other labeled "benefits." The catastrophic benefits section contains the five-year benefit period limitation. It does not contain a provision allowing that benefit period to be extended. That at least suggests that the provision relating to subsequent bene- fit periods does not apply to the catastrophic loss benefit period.

We next observe that the "BENEFIT PROVI- SIONS" section, in which the paragraph relating to subse- quent benefit periods appears, contains a number of other related provisions. It begins with a provision entitled "DEDUCTIBLE," which describes the deductible amount

for major medical benefits only; there is no deductible for catastrophic loss benefits under the terms of this policy. The "BENEFIT PROVISIONS" section then proceeds with a paragraph entitled "BENEFIT PERIOD," which describes a two-year benefit period that applies to claims for major medical benefits only. Following that provision is the "SUBSEQUENT BENEFIT PERIODS" provision on which plaintiff relies.

In that context, it becomes clear that the subject of the "BENEFIT PROVISIONS" portion of the policy, in which the reference to subsequent benefit periods appears, is *major medical benefits*, not catastrophic loss benefits. That strongly suggests that the reference to subsequent benefit periods was intended to apply only to major medical benefit periods. That suggestion is buttressed by the location of the paragraph relating to subsequent benefit periods in the section: It immediately follows the "BENEFIT PERIOD" section that unambiguously applies only to the two-year benefit period for major medical benefits.

The language of the subsequent benefit periods provision itself, when viewed in context, removes any doubt that it was intended to apply only to major medical benefit periods, not to the catastrophic loss benefit period. According to the policy, a subsequent benefit period may begin "[i]f a Covered Person incurs *Eligible Expense* for the same injury or sickness * * *." (Emphasis supplied.) The term "Eligible Expense" is defined elsewhere in the policy:

" 'Eligible Expenses' shall include *only* the charges for services and supplies, *described in the Description of Major Medical Benefits * * *."* (Emphasis supplied.)

Moreover, the subsequent benefit periods provision calls for extension of a benefit period only if the *"amounts shown in the Description of Benefits* have not been paid." (Emphasis supplied.) The only place in the policy where there are "amounts shown" in a "Description of Benefits" is the portion of the policy entitled

"DESCRIPTION OF MAJOR MEDICAL
BENEFITS AND THE MAXIMUM AMOUNT
PAYABLE FOR EACH SPECIFIC BENEFIT."

In a similar vein, the subsequent benefit periods provision operates only if the "amounts shown * * * *have not been paid * * *." (Emphasis supplied.) According to the terms of the policy, catastrophic loss coverage is triggered only if maximum amounts payable under the description of major medical benefits *"ha[ve] been paid * * *."* (Emphasis supplied.)

Finally, the subsequent benefit periods provision operates only "if all the conditions for the establishment of the Benefit Period are *again* satisfied." (Emphasis supplied.) That can only refer to conditions for the establishment of the two-year major medical benefit period, because the catastrophic loss benefit period cannot "again" be satisfied; by its terms, the catastrophic loss benefit period "will be five years from the date that covered expense under this policy is first incurred." A catastrophic loss arising from a particular sickness or injury can only be "first incurred" once.

In each case, the language of the subsequent benefit periods provision refers only to the benefit period for major medical benefits. Reading the provision in that fashion is, in fact, the only way to give effect to all of the policy language; any other reading of the provision would require us to ignore the express references to major medical benefits in that provision and, in the process, render the five-year benefit period for catastrophic loss benefits a nullity.

We conclude that the language of the policy, when read in context and in the light of all of its provisions, demonstrates that the subsequent benefit periods provision on which plaintiff relies was intended to apply only to the two-year benefit period for major medical benefits and was not intended to apply to extend the five-year benefit period for catastrophic loss benefits. The trial court, therefore, erred in granting plaintiff's motion for summary judgment and in denying defendant's motion for summary judgment.

Reversed and remanded with instructions to allow defendant's motion for summary judgment.